## STATE OF CONNECTICUT *v.* GARY WASHINGTON
### (13414)

Dupont, C. J., and O'Connell and Spear, Js.

Argued March 13—decision released September 5, 1995

---

[7] We have fully analyzed each of the defendant's claims because they will not necessarily be altered on remand.

*Paula J. Waite* and *William T. Gerace*, for the appellant (defendant).

*Pamela S. Meotti*, deputy assistant state's attorney, with whom were *James E. Thomas*, state's attorney, and *John A. O'Reilly, Jr.*, supervisory assistant state's attorney, for the appellee (state).

SPEAR, J. The defendant, Gary Washington, appeals from the judgment of the trial court revoking his probation. On appeal, he claims that the trial court improperly (1) denied his request for a public defender, (2) failed to canvass him concerning the waiver of his right to counsel, and (3) denied his request for a continuance in order to allow him to retain counsel. After oral argument, this court sua sponte raised the issue of whether the trial court violated Canon 3C (1) of the Code of Judicial Conduct[1] or the defendant's right to due process by presiding over his revocation of probation hearing after the defendant rejected the plea bargains that the court offered from the bench. The parties filed supplemental briefs, as directed by this court, addressing whether (1) plain error or *Golding*[2] review is available, and (2) if the issue is reviewable, whether the trial court committed plain error or violated the defendant's constitutional rights. We conclude that the trial court committed plain error[3] and, therefore, reverse the judgment.

---

[1] It was not necessary for us to have the issue briefed because we conclude that we improvidently raised it.

[2] A defendant can prevail on an unpreserved claim of constitutional error if the following requirements are satisfied: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[3] We conduct a plain error review rather than *Golding* review because "[t]his court has a basic judicial duty to avoid deciding a constitutional issue

The pertinent facts are as follows. On August 30, 1991, the defendant pleaded guilty to a narcotics related charge and was sentenced to ten years imprisonment, execution suspended, with a five year term of probation. On November 16, 1993, the defendant was arrested for possession of a controlled substance in violation of General Statutes § 21a-279 (c), carrying a dangerous weapon in violation of General Statutes § 53-206 (a) and certain motor vehicle violations. He was subsequently charged with violation of probation pursuant to General Statutes § 53a-32. On November 29, 1993, at a pretrial proceeding, the trial court was informed that the defendant had applied for and had been denied a public defender.[4] The case was continued to January 11, 1994.

After several continuances, the probation revocation hearing was held on March 4, 1994. Despite numerous warnings from the court to retain a private attorney, the defendant appeared on that date without counsel. Prior to the hearing, the trial court actively engaged in plea negotiations with the defendant from the bench.[5] After

---

if a nonconstitutional ground exists that will dispose of the case." *Moore* v. *McNamara*, 201 Conn. 16, 20, 513 A.2d 660 (1986).

[4] The court was informed at this hearing that the unemployed defendant's application for the appointment of a public defender had been denied. The public defender stated on the record that "[w]e're not here to subsidize people's trips to London," a reference to the fact that the *adult* defendant's mother had the financial resources to plan a trip to London.

[5] The transcript discloses that the following colloquy occurred:

"The Court: Does that mean you want your hearing or you want to work something out with Mr. O'Reilly [the Assistant State's Attorney] on the charges?

"[The Defendant]: He already talked to me. He said five years.

"The Court: That's on a violation. I'll sentence you to forty-two months, four and a half years. I mean three and a half years, if you want that today. We'll see what happens and then maybe when you get out you can ask to do something on your probation.

"[The Defendant]: You said three years, right?

"The Court: Three and a half.

"[The Defendant]: And then still have probation?

"The Court: Maybe not. If you want me to do the whole thing . . . how much time did you do on the charges before you got the ten years over your head or were you always out on bond?

the defendant rejected the court's plea offers, the court immediately proceeded with the probation revocation hearing. The trial court found the defendant in violation of probation and sentenced him to a term of five years imprisonment with no probation. This appeal ensued.

"[The Defendant]: Always out on bond.

"The Court: So you received not a day in jail.

"[The Defendant]: I think I spent a week and three days.

"The Court: Who was your lawyer?

"[The Defendant]: Klein.

"The Court: Jeffrey Klein or Gerald?

"[The Defendant]: Gerald.

"The Court: Gerald Klein. So he got you a walk, not a day in jail.

"[The Defendant]: Yes.

"The Court: This is a small amount of narcotics, Mr. O'Reilly?

"[Assistant State's Attorney]: Yes.

"The Court: Some cash?

"[Assistant State's Attorney]: Yes.

"The Court: A beeper?

"[Assistant State's Attorney]: Yes.

"The Court: And a knife over four inches?

"[Assistant State's Attorney]: Correct.

"The Court: That's it.

"[Assistant State's Attorney]: That's it.

"The Court: No guns.

"[Assistant State's Attorney]: No guns.

"The Court: I'll give you fifty months in prison and terminate the probation. That's four years and two months. That's it. You're off probation and everything. What's his bond?"

"[Assistant State's Attorney]: A thousand that you reduced.

"The Court: And he comes every time.

"[Assistant State's Attorney]: He does.

"The Court: You'll plead today and I'll let you go home with your mother and surrender like next Thursday . . . or I won't terminate the probation until you actually walk in here. Fifty months in jail . . . prison.

"[The Defendant]: So what do I got to plead?

"The Court: Carrying a dangerous weapon on the original charge or admit a violation of probation. Either one, it doesn't matter. Do you want to do that? I can't force you to do it, it's got to be voluntary.

"[The Defendant]: No.

"The Court: You don't want to do it?

"[The Defendant]: No.

"The Court: Then we'll go ahead with the hearing. I can't do anymore talking.

"[The Defendant]: Okay."

The state argues that we should not review the question of the propriety of the trial court's participation in the probation revocation hearing because it is not properly before us as the defendant failed to move for the judge's disqualification pursuant to Practice Book § 997 and has not sought review under either *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or the plain error doctrine. See Practice Book § 4185. While the state is correct in asserting that this court will not normally review claims that have not been adequately preserved for appeal, we conclude that plain error review is warranted in this case.

It is well established that plain error review is exercised in only the most limited of circumstances. "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and *public confidence in the judicial proceedings.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Wright*, 207 Conn. 276, 288–89, 542 A.2d 299 (1988); *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 98, 644 A.2d 325 (1994). As explained in detail in *Lynch* v. *Granby Holdings, Inc.*, supra, 99, our sua sponte invocation of plain error review is warranted when the following requirements are satisfied: (1) we discuss the rule and articulate why it is appropriate; and (2) we give the parties an opportunity to brief the issue.

We believe that plain error review is warranted because the fairness and integrity of the hearing as well as public confidence in judicial proceedings is involved. The court made certain comments in the preliminary colloquy prior to the plea offers. The court stated to the defendant's mother: "He's already on probation for sale of narcotics. So what would any reasonable person assume if he's caught with a beeper? Now he doesn't have a beeper because you need him. . . . He has no business. Maybe he does have a business, but if he does

it's probably illegal." These comments, indicating the judge's *prehearing* belief that the defendant was probably engaged in illegal activities along with the implicit notion of guilt associated with the offers, cast serious doubt on the court's impartiality.

"No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. A judge is not an umpire in a forensic encounter. *Strong* v. *Carrier*, 116 Conn. 262, 263, 164 A. 501 [1933]. He is a minister of justice. *Peiter* v. *Degenring*, 136 Conn. 331, 338, 71 A.2d 87 [1949]. He may, of course, take all reasonable steps necessary for the orderly progress of the trial. *State* v. *Schneider*, 158 Wash. 504, 515, 291 P. 1093 [1930]. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct." (Internal quotation marks omitted.) *Cameron* v. *Cameron*, 187 Conn. 163, 168–69, 444 A.2d 915 (1982).

We are aware of the demanding job and attendant pressures that confront a judge in a high volume court. Nevertheless, "[a] judge, trying the cause without a jury, should be careful to refrain from any statement or attitude which would tend to deny the defendant a fair trial. *State* v. *Gionfriddo*, 154 Conn. 90, 97, 221 A.2d 851 (1966). It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) Id., 169.

It is evident from our review of the transcript that the judge's preliminary comments followed by plea negotiations from the bench indicated a predisposition toward guilt. "Active involvement by trial judges in plea negotia-

tions has frequently been criticized." *State* v. *Fullwood*, 194 Conn. 573, 580–81, 484 A.2d 435 (1984). This criticism is predicated on the dangers inherent in such activity. "In the first place, judicial participation in plea negotiations is likely to impair the trial court's impartiality. The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice. . . . Moreover, the defendant is likely to make incriminating concessions during the course of plea negotiations. . . . In the second place, judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant." (Internal quotation marks omitted.) *State* v. *Gradzik*, 193 Conn. 35, 47, 475 A.2d 269 (1984); *State* v. *Messier*, 16 Conn. App. 455, 459, 549 A.2d 270, cert. denied, 209 Conn. 829, 552 A.2d 1216 (1988).

The judge's comments after he found the defendant in violation of probation illuminate his attitude toward the defendant for rejecting the plea offers. First, contrary to the plea bargain offer to allow the defendant some time to get his affairs in order before starting to serve his sentence, the court, after finding the violation, denied a stay. The court stated that "this is now Ray Charles time, it's crying time, but it's over, okay?" Second, prior to imposing sentence, the court also stated: "[R]emember you had a chance to just get rid of everything and you did not, which was very foolish." The court then imposed a five year sentence that was ten months longer than the final plea bargain offer from the court.[6]

---

[6] In its brief, the state cites *Frank* v. *Blackburn*, 646 F.2d 873, 883 (5th Cir. 1980), for the proposition that the imposition of a longer sentence after

The record discloses that the judge actively negotiated with the defendant to reach an acceptable plea bargain. At the beginning of the hearing, the judge expressed his opinion that the defendant should accept a plea and on two separate occasions, the judge stated that "[i]t would be very advantageous for [the defendant] to try and work something out . . . ." When the defendant rejected the state's offer of a five year jail sentence, the judge countered with a shorter sentence of three and one-half years imprisonment. The defendant rejected that offer because, as he explained to the judge, he did not want to be on probation when he finished serving the sentence. In response to that statement, the judge offered the defendant a longer sentence of four years and two months and a termination of the probation.

This evidence shows that the judge became so involved in the plea negotiations that he no longer appeared to function as an impartial tribunal at the probation revocation hearing, but, rather, became "an advocate for the resolution he has suggested to the defendant." (Internal quotation marks omitted.) *State* v. *Messier*, supra, 14 Conn. App. 459. That level of involvement in the plea negotiations rises to the level of active participation, which usually requires disqualification. *State* v. *Fullwood*, supra, 194 Conn. 580; *State* v. *Gradzik*, supra, 193 Conn. 47. Because the court presided over the hearing after actively participating in plea negotiations, the appearance of a fair trial was lost. We need not find, nor do we find, actual bias or prejudice on the part of the trial court. We focus on the prejudice to the defendant, which requires the remedial action of a new revocation of probation hearing.

trial than that offered prior to trial does not automatically prove that the defendant was punished for rejecting the plea bargain offer. *Blackburn* is distinguishable from this case because in *Blackburn*, the defendant's counsel asked the judge for a sentence proposal, and, therefore, the propriety of the judge's participation in the plea bargaining was not in question.

The judgment is reversed and the case is remanded for a new revocation of probation hearing.

In this opinion the other judges concurred.