## STATE OF CONNECTICUT *v.* LOUIS D'ANTONIO
### (AC 23428)

Foti, Dranginis and DiPentima, Js.

---

[21] We cannot speculate about the failure of the state or the clerk of the court to note and to comment on the previous participation of the trial court. The press of business sometimes yields innocent mistakes. It warrants remark by this court, however, in the hope that cross-checking for that key detail will assist the trial court in the future.

Argued June 10—officially released September 30, 2003

*Adele V. Patterson,* assistant public defender, for the appellant (defendant).

*Ronald G. Weller,* assistant state's attorney, with whom, on the brief, were *Timothy J. Liston,* state's attorney, and *George Ferko,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Louis D'Antonio, appeals from the judgments of conviction, rendered after a jury trial, of one count of criminal trespass in the first degree in violation of General Statutes § 53a-107 (a) (1) and two counts of interfering with an officer

in violation of General Statutes § 53a-167a (a).[1] The dispositive issue on appeal is whether the trial court committed plain error when it presided over the case after having participated actively in pretrial plea negotiations.[2] We reverse the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. By way of two substitute informations with separate docket numbers, the defendant was charged with, inter alia, (1) one count of criminal trespass in the first degree in violation of § 53a-107 (a) (1) in connection with an incident that allegedly occurred on December 9, 2001, and (2) two counts of interfering with an officer in violation of § 53a-167a (a) in connection with incidents that allegedly occurred on December 10, 2001. Each of the charges relates to the defendant's allegedly unwanted presence in his mother's home and the defendant's conduct when he was arrested there. The cases ultimately were consolidated for trial.

The defendant was arraigned in those cases on December 11, 2001, and the court appointed a public defender as his counsel. On December 18, 2001, the defendant was arraigned on violation of probation charges stemming from his prior convictions for motor vehicle offenses. At that time, the court appointed the public defender who was handling the defendant's criminal trespass and interfering with an officer cases to

---

[1] Although the defendant had been charged with two counts of criminal trespass in the first degree, the court granted the defendant's motion for a judgment of acquittal as to one of those counts at trial after the state rested its case.

[2] The defendant raised two additional claims, which we do not reach in view of our resolution. The defendant claimed (1) that the court improperly canvassed him so that he was unable to make a knowing and intelligent waiver of his right to counsel, which rendered him without counsel during a critical stage of the proceedings, and (2) that he was convicted twice, improperly, for the same offense in violation of the constitutional prohibition against double jeopardy.

represent him in the violation of probation matters. Thereafter, the court held several scheduled proceedings, often involving the criminal trespass and interfering with an officer cases as well as the violation of probation matters.[3]

On January 15, 2002, the defendant appeared in court with his counsel and indicated that he wanted to represent himself. The court told the defendant that before allowing him to represent himself, it was going to order a competency examination. On February 27, 2002, when the defendant appeared in court with his counsel, the court, *Fischer, J.*, made an uncontested finding of competency based on the competency report in the file.[4] Again, the defendant raised the issue of self-representation.[5] The court, *Fischer, J.*, allowed the defendant's counsel to withdraw from the cases involving the charges of criminal trespass in the first degree and interfering with an officer, as well as the violation of probation matters, and, on the same date, the defendant filed a pro se appearance in those cases. On March 20, 2002, the court, *Clifford, J.*, the prosecutor and the defendant engaged in an on the record plea discussion.[6]

---

[3] For the details of the defendant's appeal from the ensuing judgments of the trial court revoking his probation, see *State* v. *D'Antonio*, 79 Conn. App. 683, 830 A.2d 1187 (2003).

[4] The defendant and his counsel informed the court that he waived any competency hearing.

[5] The defendant indicated that he would accept standby counsel if the court wanted that. The court established that the defendant had never represented himself before.

[6] During the plea negotiations, the following colloquy took place:

"[The Prosecutor]: This matter . . . I did check with probation. [The defendant's sentence] is not consecutive. It was a concurrent sentence. So, I just wanted to be sure. He owes six months.

"The Court: You representing yourself, sir?

"[The Defendant]: Yes, sir, I am.

"The Court: It's never a smart move. I'm the one who sentenced you [on the motor vehicle offenses] originally, right? You've got thirty months, suspended after twenty-four months, correct? You've got two [violations of probation], which, basically, you owe six months on that. You've got a trespass [in the first degree for which] you can get up to a year; interfering

[with an officer], you can get up to a year. Your exposure is two and one-half years. Do you understand that?

"[The Defendant]: Yes. I understand that.

"The Court: Is there any offer from the state on these?

"[The Prosecutor]: Prior to the [violation of probation], one year execution suspended, six months probation on the criminal trespass.

"The Court: One year what? Suspended sentence?

"[The Prosecutor]: It was six months and—one year after six months. And then there was no offer on the interfering and the [violations of probation].

"The Court: But if it was known he was on probation, would the offer still be like a year after six months, if he was interested in that? I don't know if you are.

"[The Defendant]: I had written a letter to the public defender in January that I wanted a speedy trial motion filed. . . .

"The Court: You are really not eligible. Are you serving a sentence now?

"[The Defendant]: No, I'm not serving a sentence.

"The Court: You're not eligible for a speedy trial until you've been incarcerated for eight months. Let me just say this sir. I know you are representing yourself. You know, violation of probation, with all due respect, you don't— they're not that hard to prove. You do something on probation, they violate the terms of it, that's six months right there.

"[The Defendant]: I'm entitled to a hearing; I'm sure of that.

"The Court: Listen. I'm trying to help you. Okay. What I'm trying to tell you, it's not hard to prove those. You go to a hearing on that—you know, it's not that difficult. You're not even in front of a jury. It's in front of a judge. If the judge finds you in violation, bingo, you've got six months. The offer is a year after six months.

"[The Defendant]: I got three months in now, sir.

"The Court: That's good.

"[The Defendant]: Well, at the time of the arrest the police removed $500 from my front pocket, which would've been my bond money for that particular—

"The Court: You're not hearing me. You are going to hurt yourself.

"[The Defendant]: I'm not giving up my right for a trial.

"The Court: Listen. You can have your right to a trial. I'm just telling you to use some common sense. Okay. You've already got a lot of time. If you want to have your trial, you can end up doing two and a half years. You owe six months on the probation. The offer is six months in jail. You've got three months in.

"[The Defendant]: That was only on the [violation of probation] offer— files. Sir, that wasn't on the criminal trespass.

"The Court: It's on something right now, a year after six months. That's a good offer.

"[The Defendant]: I'm not pleading guilty to it because—

"The Court: Listen. I could [not] care less if you go to trial and get the maximum. I'm just trying to do this for you. If you want to have a trial, go ahead. I could [not] care less.

The defendant refused any offered plea bargain and insisted on exercising his "right for a trial."

On April 3, 2002, the defendant appeared before Judge Clifford for the violation of probation hearing. Although Judge Clifford recalled having had some discussion with the defendant previously in that case,[7] he proceeded to

"[The Defendant]: Well, Your Honor, it's nothing to me.

"The Court: I'm just trying to help you out, pal. I could [not] care less. You don't want to listen to me, go ahead, we'll put you down for trial.

"[The Defendant]: The warrant was signed because of a valid restraining order, which was one year and eight months old. Restraining orders last for six months.

"The Court: You're wrong, but that's all right. I mean—

"[The Defendant]: You're the guy who sentenced me, and you ordered— you said there's no contact being ordered on the day of your sentencing. I have the report right in my files right there.

"The Court: Fine. You know more than me. That is fine. You're not going to be in front of me. I guess we should schedule it for a hearing. You represent yourself. And, listen, I did my best to try to help you out. If it doesn't work out, it doesn't work out. Nothing off me. I could [not] care less.

"[The Defendant]: I know article six of the [state] constitution, [and] you took an oath to make sure that you abide by the rules of the constitution.

"The Court: I'm out of this. I'm trying to help you work the case to your benefit. You want your trial, you get all your rights—all the rights you want, and the judge can sentence you to whatever he or she wants.

"[The Defendant]: Yup.

"The Court: That's what you've got to be careful of.

"[The Defendant]: Also being held right now on all cases, all files on bond.

"The Court: Excellent point. I don't know what it means. Put this over for a hearing then.

"[The Prosecutor]: We can put the [violation of probation] down for a hearing. Start there. The other two cases—start there. If we lose or win that, fine, move on to trial. Start with the [violation of probation].

"The Court: When do you want to have a hearing?

"[The Defendant]: As soon as possible.

"The Court: All right. Let's schedule—I will have to put it before another judge because I'm not going to handle it. Doesn't matter to me. I've got to find a day that another judge is going to be available to hear it. . . . April third."

[7] The following colloquy, in relevant part, took place at the outset of the violation of probation hearing:

"The Court: I think you and I had a discussion downstairs, didn't we, last time the case was down, or no?

"[The Defendant]: No, we had a discussion here in the courtroom, sir.

canvass the defendant on the issue of self-representation. The defendant indicated that he was "prepared to continue" and to "go forward" with the hearing. Thereafter, the hearing commenced and concluded, and Judge Clifford found that the defendant did violate a condition of his probation and that the beneficial aspects of probation were no longer being served. Judge Clifford sentenced the defendant to the remaining six months of imprisonment previously suspended on the sentence for the underlying motor vehicle offenses.[8]

At the conclusion of the sentencing phase of the violation of probation hearing, there was a brief on the record discussion of the defendant's pending criminal trespass and interfering cases. Judge Clifford again briefly canvassed the defendant on the issue of self-representation and appointed standby counsel to assist the defendant in the trial of the charges of criminal trespass in the first degree and interfering with an officer.[9] On June 10, 2002, Judge Clifford granted the state's

"The Court: Was it up here?

"[The Defendant]: Yes.

"The Court: It was downstairs.

"[The Defendant]: I don't know which floor we're on right now.

"The Court: . . . [L]et me just ask you some questions. Okay. I mean, maybe I'm wrong. I thought this was something that came up before. This is scheduled today for a violation of probation hearing. Do you understand that?

"[The Defendant]: Yes. I understand that.

"The Court: And my understanding is, and I think we had this conversation before, is that you're indicating that you want to represent yourself on this.

"[The Defendant]: Yes, sir."

[8] When Judge Clifford was determining an appropriate sentence to impose on the defendant for the violation of probation, the defendant mentioned that he "had come to this courtroom fourteen times, not [merely] this particular courthouse fourteen times." Judge Clifford sought to recall his prior interactions with the defendant, stating: "Quite frankly, I vaguely remember you, but I don't remember all the specifics."

[9] The court addressed the subject of the defendant's self-representation on other occasions prior to trial, including during the proceedings on June 10 and 12, 2002.

motion to consolidate those cases for trial. On the same date, during a discussion about whether Judge Clifford had signed an arrest warrant in the case, Judge Clifford asked the defendant, "Do you have a problem with me sitting on [this case?]" The defendant responded that he had "[n]o objection."

Thereafter, following jury selection on June 12, 2002, the case proceeded to trial before Judge Clifford on June 12, 13, 14 and 18, 2002. During trial, there was no mention by anyone of Judge Clifford's recusal. On June 18, 2002, the jury returned a guilty verdict on one count of criminal trespass in the first degree in violation of § 53a-107 (a) (1) and two counts of interfering with an officer in violation of § 53a-167a (a). Judge Clifford then sentenced the defendant to a total effective term of two years imprisonment, execution suspended after twenty months, with three years of probation. This appeal followed.

The defendant claims that his trial was unlawfully conducted by the same judge who had conducted plea bargaining on the charges in violation of canon 3 (c) (1) of the Code of Judicial Conduct. The defendant argues that this deprived him of his constitutional right to a fair trial pursuant to the fifth and fourteenth amendments to the United States constitution, and article first, § 8, of the constitution of Connecticut. The defendant contends that the trial judge had a responsibility to recuse himself and, thus, although the defendant did not file a motion to recuse the judge, the error is reviewable under either *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[10] or the plain error doctrine pursuant to Practice Book § 60-5.

___

[10] Under *Golding*, a defendant may prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional

The state argues that we should not review the question of the propriety of the judge's participation in the defendant's trial because it is not properly before us, as the defendant failed to file a motion for the judge's disqualification pursuant to Practice Book § 1-23.[11] The state maintains that neither plain error review nor review under *Golding* is appropriate. The state contends, moreover, that by failing to raise the issue of Judge Clifford's disqualification before or during the trial, the defendant consented to the judge's participation under General Statutes § 51-39 (c).[12] Although the state is correct in asserting that this court will not normally review claims that have not been preserved for appeal adequately, we conclude that plain error review is warranted in this case.[13]

"It is well established that plain error review is exercised in only the most limited of circumstances. Such

violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding,* supra, 213 Conn. 239–40.

[11] Practice Book § 1-23 provides: "A motion to disqualify a judicial authority shall be in writing and shall be accompanied by an affidavit setting forth the facts relied upon to show the grounds for disqualification and a certificate of the counsel of record that the motion is made in good faith. The motion shall be filed no less than ten days before the time the case is called for trial or hearing, unless good cause is shown for failure to file within such time."

[12] The state also asserts that the defendant expressly consented to Judge Clifford's participation in the trial when Judge Clifford asked the defendant, on June 10, 2002: "Do you have a problem with me sitting on [this case]" based on the fact that Judge Clifford had signed the defendant's arrest warrant? The defendant responded: "No objection." We construe the defendant's response as limited to the judge's signing of the arrest warrant.

[13] As noted, the defendant failed to preserve his claim and requested review pursuant to either *State* v. *Golding,* supra, 213 Conn. 233, or the plain error doctrine. Because we find that a nonconstitutional ground existed with regard to whether it was plain error for the court to preside over this case after having participated actively in plea negotiations, we need not decide the constitutional claim. We conduct a plain error review rather than a *Golding* review because "[t]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." (Internal quotation marks omitted.) *State* v. *Washington,* 39 Conn. App. 175, 176–77 n.3, 664 A.2d 1153 (1995).

review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and *public confidence in the judicial proceedings.*" (Emphasis in original; internal quotation marks omitted.) *State* v. *Falcon*, 68 Conn. App. 884, 887, 793 A.2d 274, cert. denied, 260 Conn. 924, 797 A.2d 521 (2002). We conclude that plain error review is warranted "because the impropriety of a court presiding over the trial and sentencing after having actively participated in pretrial plea negotiations is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." Id.;[14] see *State* v. *Washington*, 39 Conn. App. 175, 179, 664 A.2d 1153 (1995) (plain error review warranted "because the fairness and integrity of the hearing as well as public confidence in judicial proceedings is involved").[15]

---

[14] In *State* v. *Falcon*, supra, 68 Conn. App. 884–87, the defendant appealed from the judgment of conviction, rendered after a jury trial, of criminal possession of a pistol or revolver, claiming, for the first time on appeal, that the trial court improperly had presided over his trial and sentencing after having actively participated in plea negotiations two years earlier. We afforded plain error review and held that because the existence of impartiality might reasonably be questioned and the fairness and integrity of and public confidence in the judicial proceeding affected, the trial judge committed plain error in failing to recuse himself. Id., 887–89. Accordingly, the judgment was reversed, and the case was remanded for a new trial. Id., 889.

[15] In *State* v. *Washington*, supra, 39 Conn. App. 175–79, the defendant, who had been serving a five year term of probation after having pleaded guilty to a narcotics related charge, appealed from the judgment of the trial court revoking his probation and imposing a sentence of five years imprisonment with no probation following his arrest for a variety of alleged offenses. Although the defendant failed to file a motion for the judge's disqualification pursuant to Practice Book § 997, now § 1-23, and failed to seek plain error review of the propriety of the court's participation in plea negotiations and the probation revocation hearing, we determined that our sua sponte invocation of plain error review was warranted. Id., 175–81. We held that the court committed plain error in presiding over the probation revocation hearing after having actively participated in plea negotiations with the defendant, the appearance of a fair trial having been lost. Id., 181–82. Accordingly, the judgment was reversed, and the matter was remanded for a new revocation of probation hearing. Id., 183.

"Our Supreme Court has stated that a trial court's failure to follow the mandatory provisions of a statute prescribing trial procedures or to follow a procedural rule constitutes plain error. . . . Canon 3 [c] (1) of the Code of Judicial Conduct requires a judge to disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned. The reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances. . . . *Even in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Falcon,* supra, 68 Conn. App. 887–88.

Although pretrial or plea negotiations play a critical role in the criminal justice system, and the disposition of charges after plea discussions is highly desirable, judicial participation in pretrial plea negotiations frequently has been criticized. *State* v. *Revelo,* 256 Conn. 494, 505–506, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001); see also *State* v. *Falcon,* supra, 68 Conn. App. 888; *State* v. *Washington,* supra, 39 Conn. App. 180–81. In fact, "many jurisdictions bar judges from active participation in plea negotiations."[16] *State* v. *Revelo,* supra, 506 & n.22, citing Fed.

---

[16] "Indeed, on those occasions when [our Supreme Court] has addressed claims regarding the active participation in plea bargaining by the judge responsible for trying the case and for sentencing the defendant in the event of a conviction, [it has] underscored the inappropriateness of such conduct due to its inherent dangers." *State* v. *Revelo,* supra, 256 Conn. 506, citing, inter alia, *Safford* v. *Warden,* 223 Conn. 180, 194 n.16, 612 A.2d 1161 (1992), *State* v. *Gradzik,* 193 Conn. 35, 47, 475 A.2d 269 (1984). "Those dangers are that (1) the trial judge's impartiality may truly be compromised by his [or her] own perception of a personal stake in the agreement, resulting in resentment of the defendant who rejects [the judge's] suggested disposition,

R. Crim. P. 11 (e) (1), Colo. Rev. Stat. § 16-7-302 (1) (2000), Wash. Rev. Code Ann. § 9.94A.080 (West 1998).

In Connecticut, however, "[i]t is a common practice . . . for the presiding criminal judge to conduct plea negotiations with the parties. If plea discussions ultimately do not result in a plea agreement, the trial of the case is assigned to a second judge who was not involved in the plea discussions and who is unaware of the terms of any plea bargain offered to the defendant.[17] The judge responsible for trying the case also is responsible for sentencing the defendant in the event the defendant is convicted after trial." *State* v. *Revelo*, supra, 256 Conn. 508 n.25. "[A]s long as the defendant is free to reject the plea offer [made after negotiations conducted by one judge] and go to trial before a [second] judge who was not involved in or aware of those negotiations, [the defendant] is not subject to any undue pressure to agree to the plea agreement, and the impartiality of the judge who will sentence him in the event of conviction after trial is not compromised." (Internal quotation marks omitted.) Id., 507–508, quoting *Safford* v. *Warden*, 223 Conn. 180, 194 n.16, 612 A.2d 1161 (1992).

We conclude that the court committed plain error when it presided over the defendant's trial and sentencing after having participated actively in plea negotiations with the defendant. The record discloses that during the plea negotiations, the court itself understood that it had participated actively in such a way as to make clear that a different judge would necessarily

(2) the defendant may make incriminating concessions during the course of plea negotiations, and (3) the trial judge may become or appear to become an advocate for his [or her] suggested resolution." (Internal quotation marks omitted.) *State* v. *Revelo*, supra, 506 n.23.

[17] Our Supreme Court has "approved judicial involvement in plea discussions when it is clear to all concerned parties that, in the event a plea agreement is not reached, the judge involved in the plea negotiations *will play no role* in the ensuing trial, including the imposition of sentence upon conviction." (Emphasis added.) *State* v. *Revelo*, supra, 256 Conn. 506–507.

preside over the defendant's trial and sentencing.[18] Although it seems unlikely, on the basis of the record, that at the time of the trial, the court recalled the nature of its previous involvement,[19] we need not find, nor do we find, actual bias or prejudice on the part of the court.[20] See, e.g., *State* v. *Webb*, supra, 238 Conn. 389, 460–61, 680 A.2d 147 (1996); see also *State* v. *Falcon*, supra, 68 Conn. App. 889; *State* v. *Washington*, supra, 39 Conn. App. 182. Because the court presided over the trial and sentencing after having participated actively in plea negotiations, the appearance of a fair trial was lost.

We disagree with the state's contention that by failing to raise the issue of Judge Clifford's disqualification prior to or during the trial, the defendant consented to the judge's participation pursuant to § 51-39 (c),[21] and thereby waived appellate review of the issue. The state's argument is predicated on cases such as *Timm* v.

[18] Specifically, following the unsuccessful round of plea negotiations, which included a lengthy exchange between the court and the defendant, the court stated, inter alia: "Fine. You know more than me. That is fine. *You're not going to be in front of me.* I guess we should schedule it for a hearing. You represent yourself. And, listen, I did my best to try to help you out. If it doesn't work out, it doesn't work out. Nothing off me. I could [not] care less. . . . *I'm out of this. I'm trying to help you work the case to your benefit. You want your trial, you get all your rights—all the rights you want and the judge can sentence you to whatever he or she wants. . . .* All right. Let's schedule [the violation of probation hearing]—*I will have to put it in front of another judge because I'm not going to handle it.* Doesn't matter to me. *I've got to find a day that another judge is going to be available to hear it. . . .* April third." (Emphasis added.)

[19] As to the court's recollection of the defendant or lack thereof during proceedings occurring prior to the defendant's trial, see footnotes 7 and 8.

[20] We are aware of the demanding job and attendant pressures that confront a judge in a high volume court. Nevertheless, "[i]t is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Internal quotation marks omitted.) *State* v. *Washington*, supra, 39 Conn. App. 180.

[21] General Statutes § 51-39 (c) provides: "When any judge or family support magistrate is disqualified to act in any proceeding before him, he may act if the parties thereto consent in open court."

*Timm,* 195 Conn. 202, 487 A.2d 191 (1985), which stated that the failure "to raise the issue of the [judge's] disqualification either before or during the trial, can be construed as the functional equivalent of 'consent in open court' to [the judge's] presiding over the trial" pursuant to § 51-39 (c). Id., 205. The cases relied upon by the state in support of its argument, however, are inapposite.[22] None of them renders plain error review of a claimed violation of canon 3 (c) (1) of the Code of Judicial Conduct inappropriate on the basis of § 51-39 (c) where the claimed violation implicates a judge's responsibility to recuse himself from presiding over a criminal defendant's trial after having participated actively in plea negotiations with the defendant.[23] As

---

[22] The cases relied on by the state include *Timm* v. *Timm,* supra, 195 Conn. 202 (marital dissolution action), and other civil cases. *State* v. *Fitzgerald,* 257 Conn. 106, 117, 777 A.2d 580 (2001) (prosecutor's improper disclosure of part B information to judge prior to trial did not require reversal of conviction under plain error doctrine because any error resulting from prosecutor's disclosure could have been remedied by request that judge recuse himself); *State* v. *Kohlfuss,* 152 Conn. 625, 628–31, 211 A.2d 143 (1965) (involving question of disqualification of judge because judge had sat as member of sentence review division reviewing defendant's previous, unrelated crime); *State* v. *DeGennaro,* 147 Conn. 296, 303, 160 A.2d 480 (where issue was whether parties waived statutory bar on having same judge preside at retrial of same case, court determined that "[n]ot only did each defendant 'consent in open court' to a trial before the same judge; each requested it with earnestness and vigor"), cert. denied, 364 U.S. 873, 81 S. Ct. 116, 5 L. Ed. 2d 95 (1960); *State* v. *Owens,* 63 Conn. App. 245, 259, 775 A.2d 325 (no record indicated that plea bargaining actually occurred, so record was inadequate to review defendant's claims that court imposed excessive sentence in retribution for refusal to accept plea bargain), cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001); *State* v. *Maluk,* 10 Conn. App. 422, 426–27, 523 A.2d 928 (1987) (record insufficient to determine whether judge actively participated in defendant's plea negotiations and should have sua sponte disqualified himself from presiding over sentencing, as transcript did not indicate degree, if any, that judge participated in any plea negotiations with defendant).

[23] We cannot speculate about the failure of the state or the clerk of the court to note and to comment on the previous participation of the trial court. The press of business sometimes yields innocent mistakes. It warrants remark by this court, however, in the hope that cross-checking for that key detail will assist the trial court in the future.

noted previously, that responsibility recently has been underscored by our Supreme Court and by this court. See, e.g., *State* v. *Revelo*, supra, 256 Conn. 506; *State* v. *Falcon*, supra, 68 Conn. App. 889.

We conclude that the existence of impartiality might reasonably be questioned and the fairness and integrity of and public confidence in the judicial proceeding affected when a court presides over the trial and sentencing after having participated actively in plea negotiations. In this case, the appearance of a fair trial has been lost and a new trial is warranted. See, e.g., *State* v. *Washington*, supra, 39 Conn. App. 182; see also *State* v. *Falcon*, supra, 68 Conn. App. 889.

The judgments are reversed and the cases are remanded for a new trial.

In this opinion the other judges concurred.