******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* HERMAN K.*
(AC 44317)

Bright, C. J., and Elgo and Flynn, Js.

*Syllabus*

Convicted, following a jury trial, of the crimes of assault in the first degree
    causing serious physical injury and carrying a dangerous weapon in
    connection with a stabbing incident, the defendant appealed to this
    court, claiming that the trial court judge, because of the appearance of
    partiality, was required to recuse himself at the defendant's sentencing
    hearing pursuant to the applicable rule of practice (§ 1-22) and the
    applicable rule (rule 2.11) of the Code of Judicial Conduct. Prior to
    trial, the defendant rejected a judge's plea offer of twelve years of
    incarceration, execution suspended after five years, and a period of
    probation. A separate judge thereafter presided over the defendant's
    trial, at which the jury returned a guilty verdict. When the defendant
    appeared for his sentencing, the judge brought to the attention of both
    the prosecution and the defense that he would strike a reference in the
    presentence investigation report to the rejected plea offer previously
    made to the defendant. The defendant moved for a mistrial and a new
    trial, which the court denied and interpreted as a motion to recuse the
    judicial authority. The court denied the defendant's motion for recusal,
    reasoning, inter alia, that it had no participation in any pretrial plea
    offers and, therefore, there was no violation of the rule set forth in *State*
    v. *Niblack* (220 Conn. 270), which held that a judge who participates in
    pretrial plea negotiations is disqualified from further proceedings if the
    offer is not accepted. The judge sentenced the defendant to twenty
    years of incarceration, suspended after twelve years, and three years
    of probation. On the defendant's appeal, *held* that the trial court did
    not abuse its discretion in denying the defendant's motion for recusal:
    the defendant, as the moving party, failed to meet his burden in demon-
    strating that recusal was warranted, as there was nothing in the record
    to establish that a reasonable person would question the judge's impar-
    tiality, the judge did not participate nor have any involvement in plea
    negotiations or plea offers in the defendant's case and was not responsi-
    ble for the improper reference to the plea offer in the presentence
    investigation report and, once he learned of such improper reference,
    he alerted both defense and the prosecutor, struck the reference thereto,
    and stated on the record that it would have no effect on the imposed
    sentence and that he had made no effort to confirm whether the alleged
    plea offer had been made; moreover, after attending the lengthy trial, the
    sentencing judge properly considered facts from the evidence relating
    to the seriousness of the crime and the resulting near-death injuries to
    the victim to determine the defendant's length of sentence and, although
    the sentencing judge considered other factors such as the defendant's
    remorse, his criminal history, and his age, the judge ultimately concluded
    that a lenient sentence was not warranted for his crimes; furthermore,
    the defendant's claim that the reference to the plea offer in the presen-
    tence investigation report created a floor that the judge might have felt
    an obligation to exceed was unavailing as courts are obligated to set aside
    irrelevant matter in performing their duties and courts are presumed
    to consider only properly admitted evidence when rendering a decision
    and, therefore, such a presumption applied equally to an improper men-
    tion of a rejected plea offer in a presentence investigation report pro-
    vided to the judge.

Argued January 31—officially released May 24, 2022

*Procedural History*

Substitute information charging the defendant with
the crimes of assault in the first degree and carrying a
dangerous weapon, brought to the Superior Court in
the judicial district of New Haven and tried to the jury

before *Vitale, J.*; verdict of guilty; thereafter, the court, *Vitale, J.*, denied the defendant's motion to disqualify the judicial authority; subsequently, the court, *Vitale, J.*, rendered judgment in accordance with the verdict, from which the defendant appealed to this court. *Affirmed.*

*Pamela S. Nagy*, supervisory assistant public defender, for the appellant (defendant).

*Melissa E. Patterson*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Seth R. Garbarsky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. Before this court is the defendant's appeal from the judgment of conviction, rendered following a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and carrying a dangerous weapon in violation of General Statutes § 53-206 (a). On appeal, the defendant claims that the trial court, *Vitale, J.*,[1] improperly denied the defendant's motion for disqualification at his sentencing hearing based upon what he contends was the appearance of partiality.[2] We disagree and affirm the judgment of the trial court.

We conclude that the court did not abuse its discretion in denying the defendant's motion for recusal. The court denied the defendant's motion for a mistrial, ruling that it was untimely in light of the rules of practice. The court also ruled that his retrial was unwarranted because of a probation officer's presentence report's mention of a rejected plea offer because it would have no bearing or impact on the sentence imposed. Judge Vitale then treated the motion as a motion to recuse and denied that relief.

The following facts reasonably could have been found by the jury. In May, 2018, the defendant had a fight with another man at a twenty-four hour convenience store in New Haven. The victim in this case, who is the defendant's nephew, was present at the time, but did not intervene on the defendant's behalf in that fight. Thereafter, on the night of June 16, 2018, the victim was hanging around the convenience store after 2 a.m. A red truck drove by and later returned and parked in the convenience store lot. The defendant exited the truck and, without warning, stabbed the victim in the back. When the victim abruptly turned around to confront his attacker, whom he quickly realized was his uncle, the victim was stabbed in the arm by him. The victim, who was bleeding profusely, ran 1360 feet and collapsed on the street. He was taken to a hospital by ambulance where he was treated by surgeons for injuries to his lung, diaphragm, spleen, and large intestine, as well as for a fractured rib, blood loss, and pooling of blood in his lung. The victim sustained life-threatening injuries.

The defendant was arrested and charged with assault in the first degree causing serious physical injury in violation of § 53a-59 (a) (1) and carrying a dangerous weapon in violation of § 53-206 (a). Subsequent to his arrest and prior to trial, a Superior Court pretrial proceeding was held before Judge Patrick Clifford at which the defendant rejected a plea offer of twelve years of incarceration, execution suspended after five years, and a period of probation.[3] In November, 2019, the defendant went to trial before a jury. On November 15, 2019, the jury returned verdicts of guilty on both counts. The

court then deferred the imposition of sentence pending the filing of the required presentence investigation report by the Office of Adult Probation.

The following procedural history occurred postverdict. On January 30, 2020, the presentence investigation report had been completed and the defendant appeared in court for sentencing. At that time, Judge Vitale noted that he would strike from that report a reference to the plea offer made to the defendant by Judge Clifford. Judge Vitale termed the report's single reference to a rejected pretrial plea offer "inappropriate" and stated it would have "absolutely no impact or bearing on the . . . sentence to be imposed . . . ." The judge also indicated on the record that he had no involvement in any plea negotiations and lacked knowledge about whether any occurred. Defense counsel then stated that she would file a motion for mistrial and a new trial. That motion was denied by the court on March 10, 2020. The court then interpreted the motion for mistrial and a new trial as a motion for recusal and denied that motion to recuse.

The court, in denying the motion, stated that the reference to a pretrial plea offer before another judge should not have been included in the probation officer's presentence investigation report. It noted that the reference did not result from any impropriety on the part of the court or either counsel. The court noted that it had ordered the improper reference struck and redacted from the report. The court also stated that it had no participation in any pretrial plea offers, so that there was no violation of the rule set forth in *State* v. *Niblack*, 220 Conn. 270, 280, 596 A.2d 407 (1991). In *Niblack*, our Supreme Court held that a judge who participates in pretrial plea negotiations is disqualified from further proceedings if the offer is not accepted. Id.

At sentencing, Judge Vitale heard from the prosecutor, the defendant's trial counsel, the defendant's daughter and sister, and the defendant himself and evaluated the presentence investigation report except for the portion he ordered struck. Judge Vitale recounted that he had presided over several days of trial and heard the testimony of numerous witnesses who described the stabbing by the defendant of his nephew in his back and arm, the damage to various parts of the victim's body, and the medical attention and sequela with which the victim now lives as a result of the vicious assault to which the defendant subjected him.

The court then proceeded to sentence the defendant. The court first reviewed the details of the defendant plunging a large knife into the victim's back without warning and then slashing the victim's arm as the victim attempted to defend himself. The court then described the victim running for his life for approximately 1300 feet, bleeding profusely in a bloody trail, which was later discovered by the police. After being transported

to the hospital, the victim underwent several hours of surgery to deal with damage to his lung, diaphragm, large intestine, and a rib fracture, which caused the victim to be hospitalized for a significant period of time. The court found that the crime showed "a cold and cunning premeditation," which resulted in long-lasting injuries from which the victim nearly died. The court then reviewed the victim's attitude, who was seeking significant punishment, as reported by the victim's advocate. The court also reviewed the defendant's background, including his physical and mental health history, sparse work record, and his record of eleven prior convictions, ten of which were misdemeanors, and three prior violations of probation. The court also considered common goals of sentencing, including rehabilitation, punishment, deterrence, and protection of the public. Judge Vitale then sentenced the defendant to twenty years of incarceration, the execution of which was to be suspended after service of twelve years, followed by three years of probation on the charge of assault in the first degree. On the charge of carrying a dangerous weapon, the defendant was sentenced to one year of incarceration to be served concurrently with the sentence of assault. The defendant's total effective sentence was twenty years of incarceration, suspended after twelve years, five years of which was a minimum mandatory term, and three years of probation.

On appeal, the defendant claims that when the court learned, from reading the presentence investigation report, of a prior plea offer of twelve years of incarceration suspended after eight years that the state had made to the defendant, it became obligated to recuse itself, not because of actual bias, but because there was an appearance of partiality. In order to preserve the integrity of the judicial sentencing process, he claims that a new sentence before a different judge is required.[4]

The defendant further argues that "[a] reasonable person might believe [that] the court felt an obligation to sentence [the] defendant to something higher than what was offered given the appraisal of the case by a fellow judge" and that "a reasonable person could believe this was simply something [the court] could not easily ignore." The defendant also argues that the disclosure of the terms of a pretrial plea offer resulting from a pretrial hearing before Judge Clifford created an "anchoring effect." The defendant defines the anchoring effect, to wit, as "a cognitive bias that describes the human tendency to adjust judgments or assessments higher or lower based on previously disclosed external information—the 'anchor.'" According to the defendant, if the court had not been exposed to the reference to a plea offer made by another judge prior to trial, the court would have been more likely to have imposed a less lengthy sentence.

The state argues that the court properly declined to

recuse itself. It notes that the court (1) brought the probation officer's mistaken reference to a rejected plea offer to the parties' attention and ordered it struck from the presentence investigation report, (2) had no involvement in any plea negotiations, nor any conversations with the pretrial judge who supervises pretrial offers, nor had reviewed any other judge's advice, nor had the court discussed any pretrial offers with either counsel, and (3) indicated it had no personal stake in the matter and had no resentment toward the defendant, and that he would not consider the reference he had ordered struck. The state also argues that the court appropriately focused on proper factors when it imposed sentence on the defendant.

Both the state and the defendant contend that appellate review of the denial of a motion for disqualification of a judge is governed by an abuse of discretion standard. See *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017); *State* v. *Canales*, 281 Conn. 572, 593, 916 A.2d 767 (2007). The state further points out that *State* v. *Lane*, 206 Conn. App. 1, 8, 258 A.3d 1283, cert. denied, 338 Conn. 913, 259 A.3d 654 (2021), requires a reviewing court utilizing the abuse of discretion standard to "indulge every reasonable presumption in favor of the correctness of the court's determination." (Internal quotation marks omitted.)

For reasons that follow, we first observe that we disagree with the defendant's claim that the "concerns" expressed in *State* v. *D'Antonio*, 274 Conn. 658, 681–83, 698, 877 A.2d 696, 712 (2005), are relevant to Judge Vitale's role in this case.[5] *D'Antonio* is neither factually similar to the present case nor are its requirements of the extraordinary level of plain error appellate review necessary or appropriate.

Unlike the present case, the "concerns" expressed in *D'Antonio* were related to whether there was "judicial vindictiveness" present on the part of a trial judge who had participated in unsuccessful plea negotiations and then, without objection, presided over the trial of the same defendant's charges. See id., 690–91. In reviewing and reversing the Appellate Court, our Supreme Court concluded that these concerns were not realized. Id., 698. Unlike this case, however, where Judge Vitale had not engaged in plea negotiations, *D'Antonio*, instead, involved a case in which the sentencing judge had made a pretrial offer that was not accepted and then presided over the trial of two charges against the defendant, and then sentenced him. See id., 663–66. It was from that dual role that the "concerns" in *D'Antonio* arose.

In *D'Antonio*, our Supreme Court reviewed the purposes of the procedural rule endorsed in *State* v. *Niblack*, supra, 220 Conn. 280, which provides that, "a trial court may participate in the negotiation of a plea agreement between the state and the defendant, so long as a different judge presides at trial and sentencing if the negotia-

tions are unsuccessful . . . ." *State* v. *D'Antonio*, supra, 274 Conn. 660–61.

The court explained that "judicial participation in plea negotiations is likely to impair the trial court's impartiality. The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement (and in the quick disposition of the case made possible by the bargain) and may therefore resent the defendant who rejects his advice. . . . As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant." (Internal quotation marks omitted.) Id., 676.

Additionally, however, the court "conclude[d] that establishing a violation of the *Niblack* rule does not, therefore, excuse the defendant [who claims review under the plain error doctrine] from demonstrat[ing] that the failure to grant relief will result in manifest injustice. . . . Rather, the defendant must demonstrate on appeal that the record in the case actually implicates the dangers of judicial participation in plea negotiations . . . ." (Citation omitted; internal quotation marks omitted.) Id., 681. Our Supreme Court "look[ed] beyond the fact of the *Niblack* violation and review[ed] the record as a whole for evidence of actual or apparent prejudice to the defendant." Id. "[I]n addition to judicial participation in unsuccessful plea negotiations followed by a harsher sentence than initially was offered," our Supreme Court looked to: "(1) whether the trial judge initiated the plea discussions with the defendant . . . (2) whether the trial judge, through his or her comments on the record, appears to have departed from his or her role as an impartial arbiter by either urging the defendant to accept a plea, or by implying or stating that the sentence imposed would hinge on future procedural choices, such as exercising the right to trial; (3) the disparity between the plea offer and the ultimate sentence imposed; and (4) the lack of any facts on the record that explain the reason for the increased sentence other than that the defendant exercised his or her right to a trial or hearing." (Internal quotation marks omitted.) Id., 682.

Ultimately, our Supreme Court in *State* v. *D'Antonio*, supra, 274 Conn. 658, overruled earlier Appellate Court reversals under the plain error doctrine in *State* v. *D'Antonio*, 79 Conn. App. 683, 691, 830 A.2d 1187 (2003), rev'd, 274 Conn. 658, 877 A.2d 696 (2005), and *State* v. *D'Antonio*, 79 Conn. App. 696, 830 A.2d 1196 (2003), rev'd, 274 Conn. 658, 877 A.2d 696 (2005), ruling that the violation of the *Niblack* rule, although improper, did not constitute plain error where the record showed that the trial judge presided over proceedings in a fair and evenhanded manner, no reference was made at sentencing of the rejection of the prior plea offer, and

sentence was imposed in an appropriate manner only on grounds involved in proceedings heard at trial. *State v. D'Antonio*, supra, 274 Conn. 690–91, 697–98. Our Supreme Court concluded that the "concerns of judicial vindictiveness" contemplated by the *Niblack* rule were not realized and, therefore, the Appellate Court improperly reversed the judgment of the trial court. Id., 698.

In the present case, the disparity between the plea offer and ultimate sentence imposed by Judge Vitale is the only thread in common between the proceedings before Judge Vitale, who had no involvement in plea bargaining, and the factors *D'Antonio* considered pertinent in determining whether judicial participation in unsuccessful plea negotiations mandates reversal under the plain error doctrine.[6] Not only is there no evidence that Judge Vitale in any way participated in plea negotiations in the defendant's case, the defendant makes no claim that any of the factors relevant to establishing whether either the actual or apparent form of prejudice are present, although he does emphasize that the sentence imposed by Judge Vitale after trial exceeded the sentence offered in the plea negotiations prior to trial before another judge. In sum, the concerns about "judicial vindictiveness" expressed in both *Niblack* and *D'Antonio* are not present here.[7] *State* v. *D'Antonio*, supra, 274 Conn. 698. Specifically, Judge Vitale never initiated plea discussions, did not participate in plea negotiations, and nothing in the record suggests that Judge Vitale departed from his role as an impartial arbiter, that the sentence to be imposed would hinge on the defendant's exercise of his right to trial, or that the length of the sentence to be imposed would be influenced because the defendant exercised his constitutional right to trial. Additionally, there are facts set out by Judge Vitale from the trial evidence relating to the seriousness of the crime and resulting near-death injuries, which explain the length of the sentence Judge Vitale imposed.

We next consider the defendant's argument that the sentencing court used the wrong standard applicable to claims of actual partiality rather than the appearance of it judged by whether a reasonable person might have questioned the court's impartiality in resolving the defendant's motion. In *State* v. *Milner*, supra, 325 Conn. 12–13, our Supreme Court held that where the record shows (as it does here) that the court, in reviewing a motion to recuse, had reviewed rule 2.11 of the Code of Judicial Conduct,[8] which covers both claims of actual bias and the appearance of partiality, it is fair to assume that the trial court reflected on the appropriate standard for both and rendered a conclusion consistent with its application of an objective inquiry.

The defendant concedes that the court had no actual bias. In applying Practice Book § 1-22 (a)[9] and rule 2.11 of the Code of Judicial Conduct governing recusal of

a judge, however, the reasonableness standard is an objective one. "Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the basis of all the circumstances." *State* v. *Lane*, supra, 206 Conn. App. 9. When examining such circumstances, it must be restated that the abuse of discretion standard "requires us to indulge every reasonable presumption in favor of the correctness of the [trial] court's determination." (Internal quotation marks omitted.) Id., 8. Therefore, because our law presumes and expects that a duly appointed judge, consistent with his oath of office, will perform his duties impartially, the burden rests with the party moving for recusal to show that it is warranted. See *State* v. *Milner*, supra, 325 Conn. 12.

The following circumstances in the present case are pertinent. Judge Vitale never participated in plea negotiations, although another judge did. The defendant has not shown that Judge Vitale had any role or involvement in plea offers in connection with his case, nor was Judge Vitale responsible for the mistake of a probation officer who included mention of a rejected plea offer in his presentence report to the court. When Judge Vitale learned of this improper mention, he brought it to the attention of both the prosecution and defense, ordered it struck and redacted, and stated on the record it would have no effect on the sentence to be imposed. Moreover, as was true of the trial judge in *State* v. *Milner*, supra, 325 Conn. 12, Judge Vitale stated that he had reviewed Practice Book § 1-22, rule 2.11 of the Code of Judicial Conduct, and the relevant case law in ruling on the defendant's motion. In addition, he set forth additional facts relevant to the objective inquiry of whether an appearance of bias might exist, including that he made no effort to confirm whether the alleged pretrial offer had been made. In short, there is nothing in the record to establish that Judge Vitale failed to consider whether his impartiality might reasonably be questioned under the objective standard. See *State* v. *Milner*, supra, 13 ("[w]e do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary" (internal quotation marks omitted)). Accordingly, we reject the defendant's claim that Judge Vitale applied the incorrect legal standard.

Nevertheless, the defendant briefs several reasons why, although there was no actual bias, the judge's impartiality might reasonably be questioned. First, the defendant argues that the reference in the presentence report to a pretrial sentence offer created, in effect, a floor that Judge Vitale, in sentencing, might have felt an "obligation" to exceed. We disagree. Whatever prior offer was made at a pretrial hearing before another judge, Judge Vitale made clear that he had been unaware of it and that it would have no impact whatsoever on the sentence

he imposed. Instead, he based his sentence on proper considerations. He had sat through a lengthy trial where there were days of evidence about the defendant's brutal, unprovoked attack causing hospitalization and extensive medical treatment necessary to save the victim's life, which he referenced at sentencing. All of that evidence, which the court heard, pertained to matters for the sentencing court to take into account when considering the need for punishment, deterrence and protection of the public.

Second, despite the defendant's claim to the contrary, courts and sometimes even jurors are obligated and expected to set aside irrelevant matter in the performance of their duties to which they did not cause themselves to be subjected. See *State* v. *Roy D. L.*, 339 Conn. 820, 842, 262 A.3d 712 (2021). In *State* v. *Roy D. L.*, supra, 842, which involved an appeal from a bench trial, our Supreme Court reiterated the long held presumption that whenever "the court, act[s] as the trier of fact, [it] consider[s] only properly admitted evidence when it render[s] its decision." In that case, the court also noted that trial judges are less likely to be influenced by improper remarks made by counsel during a bench trial. See id., 843–44. These same presumptions apply equally to an improper mention of a rejected plea offer in a presentence investigation report given to the judge.

Third, the defendant urges that he was remorseful, had a criminal record consisting of mostly misdemeanors, and was fifty-five years old. The court considered all of those things, but found other factors, including the defendant's "cold and cunning premeditation" and the life-threatening injuries inflicted, and concluded a lenient sentence was not warranted for his crimes.

Finally, we do not place any significance on the defendant's reliance on the fact that both the sentence imposed and the purported prior plea offer involved a figure of twelve years.

On the basis of the foregoing, we determine that Judge Vitale did not abuse his discretion in denying the defendant's motion for recusal. We conclude that from all of the circumstances a reasonable person would not question the judge's impartiality. We thus conclude that there was no appearance of partiality to warrant disqualification of Judge Vitale, the trial judge at sentencing, based on a probation officer's single mistaken reference in the presentence investigation report to a rejected plea offer, particularly when it was Judge Vitale who brought the officer's mistake to the parties' attention and took immediate steps to deal with it fairly.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with federal law; see 18 U.S.C. § 2265 (d) (3) (2018), as amended by the Violence Against Women Act Reauthorization Act of 2022, Pub. L. No. 117-103, § 106, 136 Stat. 49; we decline to identify any person protected or sought to be protected under a protection order, protective

order, or a restraining order that was issued or applied for, or others through whom that person's identity may be ascertained.

[1] Where necessary, we refer to Judge Vitale by name, but when our intent is clear that it is he who is acting, we use the term court interchangeably.

[2] The defendant also claimed on appeal that his right to confrontation under the sixth amendment to the United States constitution was violated by the hearsay testimony of a DNA analyst, but this claim was withdrawn by defense counsel at oral argument before this court.

[3] The actual time to be served was incorrectly stated in the presentence investigation report from the Office of Adult Probation as eight years of incarceration instead of the five years offered.

[4] Citing *State* v. *Milner*, 325 Conn. 1, 5, 155 A.3d 730 (2017), the defendant asserts that his claim is reviewable because the court treated his motion as a motion to disqualify. We agree with the defendant that the claim as to recusal was preserved and is reviewable.

[5] The defendant asserts that by learning there were negotiations and that an offer of twelve years suspended after eight years was made, the court was informed that a fellow judge felt that twelve years was an appropriate sentence and that eight years should be served. He further claims that a reasonable person might believe that the court then felt an obligation to sentence the defendant to something higher and that a reasonable person might not view the court as a neutral party.

[6] Unlike *D'Antonio*, the defendant was able to obtain review without resort to the plain error doctrine and facing its heightened burden of proving "manifest injustice" because Judge Vitale took the initiative to treat the defendant's motion as a motion to recuse, which was then preserved for appellate review. See *State* v. *D'Antonio*, supra, 274 Conn. 669.

[7] As a further example of the lack of vindictiveness, after Judge Vitale denied the defendant's motion for a new trial as inappropriate and untimely, Judge Vitale honored the defendant's rights and heard arguments regarding recusal, even though the defendant had filed no such motion or supporting affidavit. See Practice Book § 1-23. These actions further show a lack of any of the "concerns of judicial vindictiveness contemplated by the *Niblack* rule . . . ." *State* v. *D'Antonio*, supra, 274 Conn. 698.

[8] Rule 2.11 of the Code of Judicial Conduct provides in relevant part: "(a) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned including, but not limited to, the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding. . . ."

[9] Practice Book § 1-22 (a) provides in relevant part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct . . . ."