******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.*
AHMAAD JAMAL LANE
(AC 40185)

Elgo, Cradle and DiPentima, Js.

*Syllabus*

Convicted of the crime of assault in the first degree in connection with an incident in which he struck the victim in the head with a chair during a confrontation, the defendant appealed to this court. Before the start of trial, the trial court denied the defendant's motion to disqualify the judicial authority on the basis that the trial judge, while serving as a prosecutor, might have been involved with pretrial proceedings in one of his prior criminal cases and, thus, appeared to lack impartiality. The court also denied in part the defendant's motion to exclude from evidence certain photographs of the victim's injuries on the basis that they were irrelevant and unduly prejudicial. *Held*:

1. The trial court did not abuse its discretion in denying the defendant's motion to disqualify the trial judge: the defendant made no claim of actual bias, and his claim that a reasonable person would question the impartiality of the judge because she had served as a supervising prosecutor in the Office of the State's Attorney in the judicial district of Waterbury at the time of pretrial criminal proceedings that were conducted there against him was unavailing, as the judge had a limited role, if any, in the previous criminal proceedings and was not working in her supervisory prosecutorial role when the defendant was convicted in the previous case, twelve years had elapsed between the previous proceedings and the current criminal case, and knowledge of the defendant's conviction in the previous case was available to any trial judge; moreover, this court declined to establish a bright-line rule requiring recusal of a judicial authority when there is an appearance of partiality but an absence of actual partiality, as our Supreme Court already established a rule in *State* v. *Milner* (325 Conn. 1) requiring recusal in cases in which a reasonable person would question a judge's impartiality on the basis of all of the circumstances.

2. The trial court did not abuse its discretion in denying the defendant's motion to exclude from evidence certain challenged photographs, which showed sutured wounds to the victim's face and head: the photographs indicated the severity of the injuries and, thus, were relevant to the state's burden of proof of establishing that the defendant intended to cause serious physical injury, and they corroborated testimony from witnesses regarding the underlying confrontation and the victim's injuries; moreover, although the photographs depicted graphic injuries, the surgical site shown was clean rather than unnecessarily gory, and the court properly determined that the probative value of the depiction of serious injuries outweighed the prejudicial impact caused by the number of stitches shown.

Argued May 17—officially released July 20, 2021

*Procedural History*

Substitute two part information charging the defendant, in the first part, with the crime of assault in the first degree, and, in the second part, with being a persistent dangerous felony offender, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the court, *Keegan, J.*, denied in part the defendant's motion to exclude certain evidence; thereafter, the court, *D'Addabbo, J.*, denied the defendant's motion to disqualify the judicial authority; subsequently, the first part of the information was tried to the jury before *Keegan, J.*; verdict of guilty;

thereafter, the defendant was presented to the court, *Keegan, J.*, on a plea of guilty to the second part of the information, and the court rendered judgment in accordance with the verdict and the plea, from which the defendant appealed to this court. *Affirmed.*

*Robert L. O'Brien*, with whom, on the brief, was *Christopher Y. Duby*, for the appellant (defendant).

*Samantha Oden*, deputy assistant state's attorney, with whom, on the brief, were *Brian W. Preleski*, state's attorney, *Thadius L. Bochain*, deputy assistant state's attorney, and *David Clifton*, assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Ahmaad Jamal Lane, appeals from the judgment of conviction, rendered after a jury trial, of assault in the first degree in violation of General Statutes § 53a-59 (a) (1). On appeal, the defendant claims that the court abused its discretion by (1) denying his motion for disqualification of the trial court judge and (2) admitting into evidence two photographs of the victim's injuries. We disagree, and, accordingly, affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On September 4, 2014, at approximately 3 a.m., the defendant arrived at the home of John Fusco in New Britain. Fusco was playing cards with his daughter, Tessa Fusco, and the victim, Keven Tischofer. Tischofer was seated at the kitchen table, and when the defendant arrived, Tischofer asked the defendant for money for work he had performed on the defendant's vehicle. The defendant complained about Tischofer's work, to which Tischofer responded: "At least you have brakes. The car did not have any brakes when I got it." The defendant then picked up a chair and struck the right side of Tischofer's head.[1] The defendant then hit Tischofer at least one more time with the chair. Tischofer sustained injuries to his arm, two skull fractures, and an epidural hematoma, and he subsequently underwent emergency neurosurgery at the Hospital of Central Connecticut. Immediately after the incident, the defendant left the house and drove away. Twenty minutes later, he attempted to return to the house but left after seeing the street blocked by first responders, including police officers.

The defendant then fled to Vermont. On January 26, 2015, the defendant was arrested in Vermont and extradited to Connecticut. On November 8, 2016, by way of a substitute long form information, he was charged with one count of assault in the first degree in violation of § 53a-59 (a) (1). On October 25, 2016, in a part B information, he was charged with being a persistent dangerous felony offender pursuant to General Statutes § 53a-40 (a).

The defendant made two motions that are the subjects of this appeal. First, just as the trial judge, *Keegan, J.*, commenced the first day of trial, the defendant moved to disqualify her due to his concern that she may have been involved in pretrial discovery or motions in one of his prior criminal cases while she was a state's attorney in the Office of the State's Attorney for the judicial district of Waterbury. Judge Keegan referred the motion to disqualify to another trial court judge, *D'Addabbo, J.*, who conducted a hearing and thereafter denied the motion. Judge Keegan then presided at the defendant's trial.

In the second motion at issue in this appeal, the defendant sought to exclude from evidence three photographs of Tischofer's injuries, arguing that they were irrelevant and unduly prejudicial. After a hearing, the court admitted two of the three photographs into evidence.

Following a jury trial, the defendant was convicted of assault in the first degree. He subsequently pleaded guilty to the part B information, which charged him with being a persistent dangerous felony offender pursuant to § 53a-40 (a), resulting in a sentence enhancement.[2] The defendant was sentenced to a term of twenty-five years of incarceration, ten of which are a mandatory minimum. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in denying his motion for disqualification of the trial judge because there was an appearance of a lack of impartiality. We disagree.

The following additional facts are relevant to this claim. Judge Keegan was a supervisory assistant state's attorney in the judicial district of Waterbury between 1989 and 2004. Just prior to calling in the jury on the first day of trial, the defendant represented to the court that Judge Keegan "may have been involved" in a Waterbury case involving the defendant—specifically, a bond argument and "pretrial motion in regards to discovery and stuff like that." The defendant represented to Judge Keegan that he was "very fearing that because you do— your offer made with me. . . . I remember that argument that you and [my] attorney had, it was really intense. I never forget you, and when I first was seen, I said wait a minute, I recognize her now . . . so I'm worried about that, so I want the record to reflect that that's the issue. . . . And I remember it to this very day so I figured that's kind of a conflict and I'm afraid of that."

The defendant's conviction in the Waterbury case formed the basis for the part B information in the present case.[3] The defendant contends that the Waterbury proceedings that Judge Keegan may have been involved with occurred in 2003. The defendant was tried and convicted in 2005. Notably, Judge Keegan transferred from the judicial district of Waterbury to the Office of the Chief State's Attorney in 2004, and thus was no longer serving in Waterbury at the time of the defendant's trial and conviction in 2005. She did not remember anything about the defendant or his case, although his name was "familiar" to her. It is undisputed that a different assistant state's attorney handled the trial of the Waterbury case.[4]

In response to the defendant's concerns raised on the day of trial, the following colloquy occurred:

"[The Defendant]: I'm just . . . counsel to make sure, as much as I can with my limited understanding, that I get a fair shake in this courtroom today. You understand?

"[Judge Keegan]: I can assure you that you are going to have a fair shake every day that you are in front of me.

"[The Defendant]: Thank you for the assurance, Your Honor.

"[Judge Keegan]: You are. There is no doubt that you are . . . going to get a fair shake. . . .

* * *

"[Judge Keegan]: All right? So you tell me, do you want to go forward with me today or not?

"[The Defendant]: (indiscernible) of course, yes, (indiscernible)."

Judge Keegan referred the motion to disqualify to Judge D'Addabbo.[5] During the hearing, the defendant further clarified his concern regarding Judge Keegan's impartiality. The following colloquy took place:

"[Defense Counsel]: My client feels that Judge Keegan cannot be fair in this trial because he remembers her as a prosecutor in Waterbury back in 2004, 2003, and that she as the prosecutor *may have been involved* with his discovery on his case and with motions, perhaps the arraignment, bond agreement. He feels that she is too close to that case to be able to be fair to him today in this trial.

* * *

"[Judge D'Addabbo]: So the issue that is being presented is that that case was pending in Waterbury . . . and since it was being prosecuted by the Waterbury [Office of the State's Attorney] . . . and since at that time State's Attorney Keegan was a member of that office she may have had some involvement whether it's arraignment or a bond argument and discovery.

"[Defense Counsel]: Correct, at pretrial motions." (Emphasis added.)

In denying the defendant's motion for disqualification, Judge D'Addabbo determined that the defendant had failed to present any evidence that would reasonably call Judge Keegan's impartiality into question. He noted that "Judge Keegan doesn't even recall this case and it is a very speculative argument being made by the defendant . . . . And the issue that the defendant seems to be concerned [with] is the conviction which is a record that is—by certified copy—that, I guess, he was convicted so Judge Keegan's knowledge if there even was knowledge doesn't go to anything more than that there was a conviction." Judge D'Addabbo further concluded that, "after listening to this I just don't believe, and I'm following the rules established by the

Practice Book, that there is anything in front of this court now to make a determination that Judge Keegan's impartiality would be questioned concerning this case, and so for that reason the defendant's request to have Judge Keegan recuse herself from this matter or be disqualified from this case is denied."

On appeal, the defendant claims that the court erred by denying his motion for disqualification. Specifically, he argues that Judge Keegan should have been disqualified because her impartiality might reasonably be questioned as a result of her involvement in the Waterbury proceedings. The defendant "remembers her being present and that she was involved in pretrial motions. . . . [T]he 2005 conviction makes this case a part B case. So he feels that there is a strong connection between what could happen here on sentencing and . . . her participation in the 2003–2004 time period." Other than representing to the court Judge Keegan's alleged involvement in pretrial proceedings, the defendant offered nothing further to support his motion.[6]

"Appellate review of the trial court's denial of a defendant's motion for judicial disqualification is subject to the abuse of discretion standard. . . . That standard requires us to indulge every reasonable presumption in favor of the correctness of the court's determination." (Internal quotation marks omitted.) *State* v. *Crespo*, 190 Conn. App. 639, 656, 211 A.3d 1027 (2019).

Our analysis begins with Practice Book § 1-22 (a), which provides in relevant part that "[a] judicial authority shall . . . be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Rule 2.11 of the Code of Judicial Conduct . . . ." Rule 2.11 (a) of the Code of Judicial Conduct provides in relevant part that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including, but not limited to, the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding. . . . (5) The judge . . . (A) served as a lawyer in the matter in controversy or was associated with a lawyer who *participated substantially as a lawyer* in the matter during such association; (B) served in governmental employment and in such capacity participated *personally and substantially as a lawyer or public official* concerning the proceeding or has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy . . . ." (Emphasis added.)

As our Supreme Court has observed, "[i]n applying this rule, [t]he reasonableness standard is an objective one. Thus, the question is not only whether the particular judge is, in fact, impartial but whether a reasonable person would question the judge's impartiality on the

basis of all the circumstances. . . . Moreover, it is well established that [e]ven in the absence of actual bias, a judge must disqualify himself in any proceeding in which his impartiality might reasonably be questioned, because the appearance and the existence of impartiality are both essential elements of a fair exercise of judicial authority. . . . Nevertheless, because the law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially . . . the burden rests with the party urging disqualification to show that it is warranted." (Internal quotation marks omitted.) *State* v. *Milner*, 325 Conn. 1, 12, 155 A.3d 730 (2017).

In the present case, the defendant makes no claim of actual bias. Rather, he claims that Judge Keegan should have been disqualified because a reasonable person would question her impartiality because she was a supervising attorney with the Office of the State's Attorney in Waterbury at the time of the Waterbury proceedings. In *State* v. *Bunker*, 89 Conn. App. 605, 612, 874 A.2d 301 (2005), appeal dismissed, 280 Conn. 512, 909 A.2d 521 (2006), the defendant raised a similar claim that the trial judge should have been recused "because her impartiality might reasonably be questioned as a result of having served as a supervisor in the [Office of the State's Attorney] . . . when he was convicted in 1989 and as head of the [O]ffice of the [S]tate's [A]ttorney . . . when he was convicted in 1996—the same convictions that comprised the second part of the state's information." On appeal, this court concluded "that the defendant has failed to demonstrate a factual basis sufficient to support his claim of judicial disqualification on the basis of the judge's former role as a supervisory prosecutor." Id., 621. In so concluding, we found it significant that the judge, as a supervising attorney, had a limited role in the prior case, and that ten years had elapsed between the judge's prior involvement and the case at hand. Id.

As in *Bunker*, Judge Keegan had a limited role, if any, in the Waterbury proceedings, and twelve years elapsed between the time Judge Keegan left the judicial district of Waterbury in 2004—the last point in time she may have been involved in the Waterbury proceedings—and the defendant's trial in the present case in 2016. Moreover, Judge Keegan was no longer working in the judicial district of Waterbury when the Waterbury case went to trial in 2005. The defendant argues that Judge Keegan should have been disqualified on the basis of the appearance of partiality alone, because she *may have been* involved in the Waterbury proceedings. Judge Keegan's limited role, if any, in those proceedings compels our conclusion that the trial court did not abuse its discretion in denying the motion for disqualification. See id., 621–22. Furthermore, as Judge D'Addabbo noted, the part B information in the present case is based solely on the defendant's conviction in the Water-

bury case, and any judge in Judge Keegan's position in the present case would have knowledge of that record. Accordingly, the defendant did not meet his burden to show that disqualification was warranted.

In addition, the defendant asks this court to establish a bright-line rule requiring recusal when there is an appearance of partiality, in the absence of any actual partiality, on the basis of policy interests in maintaining the appearance of judicial impartiality. Our rules of practice, however, plainly require judges to recuse themselves whenever a person, under the totality of the circumstances, might reasonably question a judge's impartiality. Our Supreme Court articulated such a rule in *State* v. *Milner*, supra, 325 Conn. 12, requiring recusal in cases in which no actual partiality exists, but where "a reasonable person would question the judge's impartiality on the basis of all the circumstances." (Internal quotation marks omitted.) That rule sufficiently addresses the defendant's policy concerns. Furthermore, our Supreme Court has noted, and consistently applied, the standard that "each case of alleged judicial impropriety must be evaluated on its own facts . . . ." *Abington Ltd. Partnership* v. *Heublein*, 246 Conn. 815, 826, 717 A.2d 1232 (1998). Finally, the court in *Bunker* considered the "practical realities of prosecutors in busy . . . courts" when concluding that the impartiality of the judge could not reasonably be questioned on the basis of her prior role as a prosecutor. *State* v. *Bunker*, supra, 89 Conn. App. 621. Accordingly, we decline to revisit the precedent set by our Supreme Court in *Milner*.

On our review of the record before us, we conclude that Judge D'Addabbo did not abuse his discretion in denying the motion to disqualify Judge Keegan. Accordingly, the defendant's first claim fails.

II

The defendant next claims that the court abused its discretion in admitting into evidence two photographs of Tischofer's injuries. Specifically, the defendant claims that the photographs were (1) irrelevant and (2) unduly prejudicial. We disagree.

The following additional facts are relevant to this claim. On November 21, 2016, the court held a pretrial hearing, during which the defendant objected to three photographs of Tischofer's injuries that the state intended to proffer at trial. The first photograph depicted Tischofer's face with a black eye and a small portion of a surgical wound. The second photograph depicted Tischofer's forehead, which included part of a surgical wound. The third photograph depicted a full surgical wound on Tischofer's head. The defendant argued that the photographs should be excluded because "the injury was severe, but these fifty-six or fifty-eight stitches are really gory. They don't depict the

injury that he received. That it's just showing the surgery that was necessary to repair the internal hemorrhaging. . . . [I]f the jury saw this they would immediately be impacted . . . . I mean it's really serious looking . . . . This would be highly prejudicial I believe." The state contended that the photographs were admissible to show "how extensive this injury was . . . ." Furthermore, the state argued that "the photos, because it's after the procedure, are . . . less gory . . . you got a clean photo of someone in the stages of recovery rather than some blood and gore . . . ."

After hearing from the parties, the court concluded that the first and third photographs were admissible, but it excluded the second photograph in order to limit "repetitiveness." As the court explained: "You know you have to weigh the state's burden of proof and their right to present their evidence versus unnecessarily gory photos or cumulative evidence. I think, number one, clearly that is admissible, and your objection to the head . . . picture is overruled. It does show evidence of what the state alleges is the result of the assault. With respect to number two and number three, the court finds them somewhat . . . I think number two I'm going to grant the motion on number [two], however, as to number three, your motion is overruled and that will be admissible. The state does have to prove serious physical injury, and this photograph is demonstrative of what the witness' testimony is going to be. It will aid the jury in understanding what that doctor had to do, which goes to serious physical injury, and the court does not find it unnecessarily gory, it is rather clean, so I'm going to keep two out just for its repetitive nature, numbers one and three will be permitted to be shown to the jury during the state's [case-in-chief]."

During trial, the first and third photographs were entered into evidence through the direct examination of Tischofer. He explained that the photographs were taken approximately one week after he was released from the hospital, and he described what the photographs depicted. Ahmed Kahn, Chief of the Division of Neurosurgery at the Hospital of Central Connecticut, who performed emergency surgery on Tischofer, also testified about the injuries and surgical procedures performed.

As a preliminary matter, we set forth the applicable standard of review. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and

involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Osbourne*, 162 Conn. App. 364, 369–70, 131 A.3d 277 (2016). In addition, "[e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) Id., 370.

The defendant first claims that the photographs were irrelevant. Section 4-1 of the Connecticut Code of Evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." This court has noted that "[e]vidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. . . . Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, [as] long as it is not prejudicial . . . ." (Internal quotation marks omitted.) *State* v. *Osbourne*, supra, 162 Conn. App. 370. "In determining whether photographic evidence is admissible, the appropriate test is relevancy, not necessity." *State* v. *Kelly*, 256 Conn. 23, 65, 770 A.2d 908 (2001).

At trial, the state bore the burden of proving beyond a reasonable doubt that the defendant intended to cause serious physical injury in violation of § 53a-59 (a) (1). " 'Serious physical injury' " is defined as that which "creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). The two photographs that were admitted into evidence show a black eye and extensive surgical wounds, which are indicative of the severity of the injuries. Those photographs, and in particular the photograph of the surgical wounds showing the necessity of invasive neurosurgery, have a tendency to prove that the injuries were severe enough to constitute a serious physical injury. The photographs also would have probative value to show intent, another element of the state's burden. "Intent to cause death or serious physical injury may be inferred from the . . . type of wound inflicted . . . . The extent and severity of injuries often are used as indirect proof of intent." (Citation omitted; internal quotation marks omitted.) *State* v. *Best*, Conn. , , A.3d (2020). Lastly, the photographs were relevant, as they corroborated the testimony of the witnesses about the events

that transpired and Tischofer's subsequent injuries. The challenged photographs tend to make the existence of multiple material facts, including serious physical injury and the intent of the defendant, more probable. Accordingly, we conclude that the trial court did not abuse its discretion in finding the photographs to be relevant.

We next address whether the trial court properly concluded that the photographs were not unduly prejudicial. Section 4-3 of the Connecticut Code of Evidence precludes evidence if its probative value is outweighed by the danger of unfair prejudice. As our Supreme Court has observed, "[a] potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury." (Internal quotation marks omitted.) *State* v. *Best*, supra, Conn. . "[P]hotographs [that] have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry are not rendered inadmissible simply because they may be characterized as gruesome." (Internal quotation marks omitted.) Id., . "The question is not solely whether the evidence is gruesome, disturbing or otherwise inherently prejudicial but whether its prejudicial nature is undue or unfair, a question that requires the trial court to undertake the relativistic assessment of probative value versus prejudicial effect . . . ." (Internal quotation marks omitted.) Id., .

The defendant contends that the photographs of the injuries are unduly prejudicial because they are "gory" and would "really impact the jury." As the court noted in *Best*, even gruesome photographs are admissible if they tend to prove or disprove a material fact. The trial court in the present case noted that it did "not find [the photograph of the surgical wound] unnecessarily gory, it is rather clean . . . ." The photographs depict clean surgical wounds one week after Tischofer was released from the hospital, as opposed to fresh, uncleaned, and untreated wounds.

The defendant pointed to the number of stitches as evidence of the photographs' "gory" characteristics. The sheer number of stitches alone, however, is not enough to render the photographs unduly prejudicial. The photographs are not rendered inadmissible simply because they may be characterized as gruesome. Whether any resulting prejudice was undue or unfair was appropriately considered by the trial court. Here, the court determined that the probative value of the photographs, depicting the seriousness of the injuries sustained by the victim, outweighed the prejudicial impact. Accordingly, we conclude that the court did not abuse its discretion in denying, in part, the motion to exclude the challenged photographs.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] At trial, the defendant raised a claim of self-defense. More specifically, he alleged that Tischofer raised a knife during the verbal confrontation and that he struck Tischofer with the chair in self-defense.

[2] The part B information was based on a conviction of assault in the first degree, in violation of § 53a-59 (a) (1), entered on September 15, 2005 in the judicial district of Waterbury.

[3] We refer to the pretrial motions and discovery in the defendant's Waterbury case, which led to the conviction that formed the basis for the part B information in the present case, as the "Waterbury proceedings."

[4] During the hearing on the defendant's motion for disqualification, the following colloquy occurred:

"[Judge D'Addabbo]: And the state's attorney that was prosecuting that trial was not then State's Attorney Keegan.

"[Defense Counsel]: Was not."

[5] During the defendant's colloquy with Judge Keegan regarding his concern about her impartiality, the following occurred:

"[Judge Keegan]: Do you want another judge to hear this and decide whether or not there's a conflict of interest?

"[The Defendant]: Yes.

"[Judge Keegan]: You do. Okay, because, I can get another judge in here . . . to hear this and make a decision as to whether or not there's a conflict."

[6] We briefly address the reviewability of this claim. The defendant failed to comply with Practice Book § 1-23, which requires that a motion to disqualify a judge be written and filed within ten days before trial and be accompanied by an affidavit of facts and certification by counsel. However, as our Supreme Court has noted, "[a] number of Appellate Court cases have reviewed claims of judicial bias despite acknowledging that the moving party had failed to comply with the written procedures required in . . . § 1-23." *State* v. *Milner*, 325 Conn. 1, 8, 155 A.3d 730 (2017). The court declined to adopt a broad proposition that noncompliance with § 1-23 acts as a per se preclusion to review of a denial of an oral motion for disqualification. See id., 7–8. Accordingly, the defendant's failure to comply with the procedures required by § 1-23 does not preclude our review of this matter.