******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* KENNETH B.*
(AC 45975)

Clark, Seeley and DiPentima, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of assault in the second degree, and, under a part B information, on a plea of guilty, of being a persistent serious felony offender, the defendant appealed to this court. The victim did not testify at the defendant's trial. Instead, the state introduced evidence of the victim's injuries through, inter alia, the testimony of S, the emergency room physician who treated the victim on the night of the incident. Over the objection of the defendant, two photographs of the victim were also admitted into evidence. These photographs were taken shortly after the assault occurred and depicted the victim with lacerations on her forehead and lips and with blood on her face and shirt. On the defendant's appeal, *held*:

1. There was sufficient evidence to sustain the defendant's conviction of assault in the second degree: the jury reasonably could have concluded that the victim suffered a serious physical injury on the basis of the evidence regarding her loss of consciousness during the incident, as this court previously has held that loss of consciousness may constitute a serious loss or impairment of the function of a bodily organ; moreover, contrary to the defendant's contention, the jury was entitled to rely on S's testimony regarding the victim's statement to him that she had experienced a brief loss of consciousness because the hearsay was admitted without objection; furthermore, the evidence was not insufficient merely because it was in conflict with or inconsistent with testimony that defense counsel elicited from S that certain medical records indicated that the victim had denied any loss of consciousness to the registered nurse who treated the victim on the night of the incident.

2. The trial court did not abuse its discretion in admitting into evidence the two photographs of the victim: contrary to the defendant's assertions, the photographs were relevant because they were probative of the two statutory (§ 53a-60 (a) (1)) elements of assault in the second degree, namely, that the defendant intended to cause the victim serious physical injury and that he caused the victim serious physical injury, as the defendant's intent could be inferred from the type of wounds inflicted, and the photographs depicted the size and location of the lacerations, in addition to the resulting blood loss, which were indicative of the severity of the victim's injuries; moreover, the trial court properly concluded that the photographs were not unduly prejudicial, despite their graphic nature, because they tended to prove a material fact in issue, and the trial court reasonably determined that their probative value outweighed their prejudicial impact.

Argued October 11, 2023—officially released January 9, 2024

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crime of assault in the second degree, and, in the second part, with being a persistent serious felony offender, brought to the Superior Court in the judicial district of New Britain, geographical area number fifteen, where the first part of the information was tried to the jury before *Baldini, J.*; verdict of guilty; thereafter, the defendant was presented to the court, *Cordani, J.*, on a plea of guilty to the second part of the information; judgment in accordance with the verdict and plea, from which the defendant appealed to this court. *Affirmed*.

*Tamar Birckhead*, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Christian M. Watson*, state's attorney, and *David Clifton*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Kenneth B., appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (1). On appeal, the defendant claims that (1) there was insufficient evidence presented at trial to support his conviction of assault in the second degree, and (2) the trial court abused its discretion in admitting into evidence two photographs of the victim. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our resolution of this appeal. On the night of November 21, 2020, the defendant was in the apartment of his sister, Emma S. (Emma). The victim, who is the defendant's adult daughter, was living with Emma during this time. At approximately 9:45 p.m., while Emma was in her bedroom, she heard the defendant and the victim arguing in the living room. Emma shouted for the victim to go into the bedroom, and when she did not, Emma heard the argument continue and get louder.

Emma went into the living room and observed the defendant standing over the victim, who was sitting on the floor. The defendant was hitting the victim and holding a small object in his left hand, which Emma believed to be a handgun.[1] Emma used a "grabber"[2] to strike the defendant to get him off the victim. When she told the defendant that she was going to call the police, he left the apartment. Emma subsequently called 911.

Officer Ryan Bailen of the New Britain Police Department arrived at the apartment to find the victim bleeding. Officer Bailen observed that there was blood on the coffee table, blood and locks of hair on the floor of the living room, and blood on the floor of the bathroom. A paramedic who subsequently arrived at the scene observed that the victim was "bloodied up" and "[d]istraught." The victim reported to the paramedic that she was in "severe" pain and that she was missing a tooth. The paramedic bandaged the victim's wounds and looked for the tooth.[3] The victim was then transported by ambulance to the Hospital of Central Connecticut in New Britain.

At the hospital, the victim was treated by Theodore Sherry, an emergency room physician. Dr. Sherry observed that the victim had a "fairly deep" four centimeter laceration on her forehead, had two lacerations on her lips and was missing a tooth. Dr. Sherry used approximately twelve sutures to close all of the lacerations and sutured the laceration on the victim's forehead in two separate layers. The victim reported to Dr. Sherry that she had experienced a brief loss of consciousness. Dr. Sherry ordered a computerized tomography scan as a result of the victim's head trauma, to assess if there

was bleeding in the victim's brain or facial fractures; the results of the scan showed neither.

As a result of this incident, the defendant was arrested and charged, by way of a substitute information, with one count of assault in the second degree in violation of § 53a-60 (a) (1). After a trial, the jury found the defendant guilty as charged. The defendant then pleaded guilty to a part B information, which charged him as a persistent serious felony offender in violation of General Statutes § 53a-40 (c). The court subsequently sentenced the defendant to fifteen and one-half years of incarceration followed by four and one-half years of special parole. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that there was insufficient evidence to establish that he had caused serious physical injury to the victim, as required for a conviction of assault in the second degree. We conclude there was sufficient evidence to sustain the conviction.

"In reviewing a sufficiency of the evidence claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *State* v. *Luciano*, 204 Conn. App. 388, 396, 253 A.3d 1005, cert. denied, 337 Conn. 903, 252 A.3d 362 (2021). "As we previously have explained, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [fact finder's] verdict of guilty." (Internal quotation marks omitted.) *State* v. *Fisher*, 342 Conn. 239, 249, 269 A.3d 104 (2022).

"To convict the defendant of assault in the second degree under § 53a-60 (a) (1), the state was required to prove that (1) the defendant intended to cause serious physical injury to another person, and (2) acting with such intent, the defendant caused serious physical injury to that person." Id., 250. For purposes of that statute, "serious physical injury" means "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4).

At trial, the state presented evidence regarding the victim's injuries primarily through the testimony of Dr. Sherry. Dr. Sherry testified about the "surgical intervention" required to close the lacerations with approximately twelve sutures and explained that, as to the fairly deep laceration to the victim's forehead, he "had to suture the deeper layer first and then the superficial layer." As to the forehead laceration, Dr. Sherry testified that he "[t]ypically" would expect a scar to be formed, which would be "[t]he same length [as] the wound," but that he could not say whether the victim had a scar in the present case because he had not seen her since he performed the surgical procedure. Dr. Sherry explained the risks that would be present if the victim's injuries had gone untreated, specifically, that "any kind of external wound that's not treated has a risk of infection. . . . [T]he skin is an organ; the largest in the body, and it serves many functions, one of which is . . . a barrier against infection," and, as to "cosmetic effect . . . if it wasn't fixed, then there would be a larger scar." Dr. Sherry further testified as to his observation that the victim was missing a tooth and that he did not provide any treatment related to the tooth, as it would be appropriate for the victim to follow up with a dentist. In addition to Dr. Sherry's testimony, the state presented testimony from the paramedic about the victim's missing tooth and photographic evidence of the victim's lacerations.

Dr. Sherry also testified that the victim had reported a brief loss of consciousness. On cross-examination, defense counsel elicited testimony from Dr. Sherry that certain medical records indicated that the victim had denied any loss of consciousness to a registered nurse who treated her at the hospital. On redirect examination, Dr. Sherry testified that he was not present when the victim talked to the registered nurse, and he confirmed that the victim did report directly to him that she had lost consciousness.

The victim did not testify at trial. An inspector with the New Britain State's Attorney's Office testified regarding his efforts to serve a subpoena on the victim and his inability to locate her despite those efforts. After the state rested, defense counsel made an oral motion for a judgment of acquittal, which the court denied.

During the state's closing argument, the prosecutor argued that there were multiple theories under which the jury could find that the defendant had caused serious physical injury to the victim. Specifically, the prosecutor argued that the victim's forehead laceration and missing tooth constituted serious disfigurement, the laceration constituted a serious impairment of the victim's health, and the laceration and the victim's brief loss of consciousness constituted a serious impairment of the function of her bodily organs, i.e., her skin and

her brain.

On appeal, the defendant argues that the evidence of the victim's loss of consciousness was insufficient to support a finding that the victim suffered a serious physical injury because the evidence constituted hearsay and there was conflicting evidence as to whether the victim had in fact suffered a loss of consciousness. The defendant also argues that there was no evidence that the forehead laceration or missing tooth caused serious disfigurement to the victim.[4]

We conclude that there was sufficient evidence that the victim suffered a serious physical injury on the basis of the evidence regarding her loss of consciousness. Because the jury reasonably could have concluded that the victim suffered a serious physical injury on the basis of the evidence of her loss of consciousness, we do not address the defendant's remaining arguments as to the victim's forehead laceration and missing tooth.

This court previously has held that loss of consciousness may constitute a serious loss or impairment of the function of a bodily organ and, thus, a serious physical injury. See *State* v. *Morlo M.*, 206 Conn. App. 660, 673–74, 261 A.3d 68 (jury reasonably could find serious physical injury on basis of testimony that victim lost consciousness at some point during defendant's repeated beating of her), cert. denied, 339 Conn. 910, 261 A.3d 745 (2021); see also *State* v. *Miller*, 202 Conn. 463, 488–89, 522 A.2d 249 (1987) (severe facial lacerations and temporary loss of consciousness caused by strangling were " 'serious physical injur[ies]' " supporting conviction of assault in first degree); *State* v. *Rumore*, 28 Conn. App. 402, 413–15, 613 A.2d 1328 (temporary loss of consciousness and laceration requiring surgical stapling satisfied "serious physical injury" element of assault in first degree of elderly victim), cert. denied, 224 Conn. 906, 615 A.2d 1049 (1992). In *Rumore*, this court explained that § 53a-3 (4) "does not require that the impairment of the organ be permanent. The jury could properly interpret the evidence to prove that the victim's brain was not functioning at a cognitive level when she was unconscious and thus was impaired." *State* v. *Rumore*, supra, 415.

The defendant contends that the evidence regarding the victim's loss of consciousness was insufficient because "there was no testimony aside from a hearsay statement attributed to [the victim] that she experienced a brief loss of consciousness," and there was no direct testimony from the victim herself and other corroborating witnesses about that loss of consciousness. It is well established, however, that "when hearsay is admitted without objection, it is a sufficient basis, if believed by the trier, for a finding of fact." *State* v. *Thompson*, 305 Conn. 412, 438 n.7, 45 A.3d 605 (2012), cert. denied, 568 U.S. 1146, 133 S. Ct. 988, 184 L. Ed. 2d 767 (2013); see also *Walker* v. *Commissioner of Correction*, 103 Conn. App. 485, 492 n.2, 930 A.2d 65,

cert. denied, 284 Conn. 940, 937 A.2d 698 (2007); *State* v. *Outlaw*, 70 Conn. App. 160, 168, 797 A.2d 579 (2002). Indeed, "[i]n viewing the evidence, [i]f [inadmissible] evidence is received without objection, it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not prevent its use as proof so far as it has probative value. . . . [T]herefore . . . appellate review of the sufficiency of the evidence . . . properly includes hearsay evidence even if such evidence was admitted despite a purportedly valid objection."[5] (Internal quotation marks omitted.) *State* v. *Chemlen*, 165 Conn. App. 791, 817–18, 140 A.3d 347, cert. denied, 322 Conn. 908, 140 A.3d 977 (2016). Accordingly, the jury was entitled to rely on Dr. Sherry's testimony, to which the defendant did not object, regarding the victim's statement to him that she had experienced a brief loss of consciousness.

In addition, although the defendant elicited testimony from Dr. Sherry regarding the victim's inconsistent report to a registered nurse, as reflected in the medical records, we are mindful that "[*e*]*vidence is not insufficient . . . because it is conflicting or inconsistent. . . . The* [jury] *can . . . decide what—all, none, or some—of a witness' testimony to accept or reject.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Michael T.*, 194 Conn. App. 598, 621, 222 A.3d 105 (2019), cert. denied, 335 Conn. 982, 242 A.3d 104 (2020). As explained previously, Dr. Sherry testified on redirect examination, consistent with his testimony during direct examination, that the victim reported directly to him that she lost consciousness. On the basis of Dr. Sherry's testimony, we conclude that there was sufficient evidence from which the jury reasonably could have found that the victim suffered a serious impairment of the function of a bodily organ and, thus, a serious physical injury.

## II

The defendant next claims that the court abused its discretion in admitting into evidence two photographs of the victim. Specifically, the defendant claims that the photographs were (1) irrelevant and (2) unduly prejudicial. We disagree.

The following additional facts are relevant to this claim. At trial, the state sought to admit into evidence two photographs of the victim during its direct examination of Officer Bailen. The photographs depicted the victim with lacerations on her forehead and her lips and with blood on her face and her shirt. Defense counsel objected to the admission of both photographs on the basis that they were "[m]ore prejudicial than probative . . . ."

The court heard arguments from the parties outside the presence of the jury. The state argued: "[O]ne of

the elements that the state has to prove here is serious physical injury. I think those photos accurately depict the injuries on the night in question. Obviously, the jury's not going to have the victim here to testify about what those injuries did to her. There will be medical personnel to talk about the medical treatment that related to those injuries; however, the state does need to put forward proof beyond a reasonable doubt that the assault caused serious physical injury, and I would report that those two photos accurately depict that element."

Defense counsel argued that the photographs would "unduly arouse the jury's emotions and cause prejudice. As [the prosecutor] has said . . . he's going to call the medical [personnel] to testify to the conditions of the lacerations. And the pictures here have blood everywhere, Your Honor. They're not exactly explaining the injury in itself, Your Honor. Just because there's blood everywhere that can arouse the jury's emotions. I think that the harm is serious and inflammatory."

The court overruled defense counsel's objections and determined that the photographs were admissible. The court explained: "I find that [these photographs] would assist in establishing elements of this offense, including intent, causation and the issue of serious physical injury. . . . I am mindful that the appropriate test is relevancy, not necessity. Also, that a potentially inflammatory photograph, which I think that's the defense's argument in this particular case, that both photographs are inflammatory. Those photographs that may be characterized that way may be admitted if the court in its discretion determine[s] that the probative value of the photograph outweighs the prejudicial effect that it might have on this particular jury. These photographs, in this court's assessment, have a reasonable tendency to prove or disprove a material fact at issue. I do believe that the probative value does outweigh its prejudicial effect with respect to both photographs. I've considered the case law, including *State* v. *Lane*, [206 Conn. App. 1, 258 A.3d 1283, cert. denied, 338 Conn. 913, 259 A.3d 654 (2021)], along with *State* v. *Kelly*, [256 Conn. 23, 770 A.2d 908 (2001)]. I therefore find that these photographs, both of their probative value does outweigh [their] prejudicial effect. And I also note . . . with regard to the number of photographs, there are two." After the jury returned to the courtroom, the court explained that the photographs were admitted as full exhibits. Officer Bailen testified that the photographs accurately depicted the victim's appearance on the night of November 21, 2020.

As a preliminary matter, we set forth the applicable standard of review. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings

will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law. . . . In addition, [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Lane*, supra, 206 Conn. App. 14.

On appeal, the defendant first claims that the photographs were irrelevant.[6] Section 4-1 of the Connecticut Code of Evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." This court has noted that "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, [as] long as it is not prejudicial . . . . In determining whether photographic evidence is admissible, the appropriate test is relevancy, not necessity." (Citation omitted; internal quotation marks omitted.) *State* v. *Lane*, supra, 206 Conn. App. 14–15.

At trial, the state bore the burden of proving beyond a reasonable doubt that the defendant intended to cause the victim serious physical injury and caused the victim serious physical injury. See General Statutes § 53a-60 (a) (1). The two photographs at issue are probative as to both statutory elements. As to the first element, because "[i]ntent to cause . . . serious physical injury may be inferred from the . . . type of wound inflicted," the photographs have probative value to show intent. (Internal quotation marks omitted.) *State* v. *Lane*, supra, 206 Conn. App. 15; see also *State* v. *Best*, 337 Conn. 312, 320, 253 A.3d 458 (2020) ("[t]he extent and severity of injuries often are used as indirect proof of intent"); *State* v. *Osbourne*, 162 Conn. App. 364, 372, 131 A.3d 277 (2016) (photographs depicting victim's blood loss and bloody clothing were relevant to issue of "whether the defendant possessed the requisite intent of the crime charged"). As to the second element, the photographs depict the size and location of the lacerations on the victim's face, in addition to blood loss resulting from those lacerations, which were indicative of the severity of those injuries. *State* v. *Best*, supra, 318 (amount of blood loss suffered by victims immediately after shooting was indicative of severity of wounds and had tendency to prove that wounds

were grievous enough to cause death of one victim and serious physical injury to other victim); *State* v. *Lane*, supra, 15 (photographs depicting black eye and surgical wounds were indicative of severity of injuries and had tendency to prove that injuries were sufficiently severe to constitute serious physical injury); *State* v. *Osbourne*, supra, 371–72 (photographs depicting blood loss and bloody clothing were relevant, among other reasons, to establish that victim suffered physical injury). Accordingly, we conclude that the court did not abuse its discretion in determining that the photographs were relevant.

We next address whether the trial court properly concluded that the photographs were not unduly prejudicial. Section 4-3 of the Connecticut Code of Evidence provides that "[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

The defendant argues that the photographs are unduly prejudicial because they are "graphic" and gory, as they depict the victim "moments after the incident, covered in blood . . . ." He contends that the photographs served only "to disgust and inflame the jur[ors], deterring them from carefully considering whether the state had met its burden." As our Supreme Court noted in *Best*, however, even gruesome photographs can be admissible if they tend to prove or disprove a material fact. *State* v. *Best*, supra, 337 Conn. 323–24. "[P]hotographs [that] have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry are not rendered inadmissible simply because they may be characterized as gruesome. . . . The question is not solely whether the evidence is gruesome, disturbing or otherwise inherently prejudicial but whether its prejudicial nature is undue or unfair, a question that requires the trial court to undertake the relativistic assessment of probative value versus prejudicial effect . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Lane*, supra, 206 Conn. App. 16.

Thus, contrary to the defendant's contention, the photographs at issue in the present case are not rendered inadmissible simply because they may be characterized as "graphic" or gory. The court reasonably determined that the probative value of the photographs, depicting injuries sustained by the victim, outweighed their prejudicial impact. See *State* v. *Best*, supra, 337 Conn. 316, 325 (concluding that trial court did not abuse its discretion in determining that, on balance, probative value of photographs depicting bloody interior of car outweighed their prejudicial effect); *State* v. *Osbourne*, supra, 162 Conn. App. 375 ("although the photographs

admitted into evidence depicted blood found at the scene and the victim's bloody clothing, the trial court's determination that they were more probative than prejudicial [did] not constitute an abuse of discretion"). Accordingly, we conclude that the court did not abuse its discretion in admitting into evidence the challenged photographs.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] At trial, Emma testified that she did not remember seeing anything in the defendant's hand and she did not remember telling the police that the defendant had a gun. A redacted copy of a written statement that Emma had provided to the police subsequently was admitted into evidence as a full exhibit, which contained Emma's report that the defendant had been holding what she believed to be a small handgun.

[2] At trial, Emma described the object that she identified as a "grabber" as a metal stick that she uses to pick up items and demonstrated to the prosecutor its approximate length by showing him the cane she had with her on the stand.

[3] At trial, the paramedic testified that she did not find the tooth at the apartment, but she believed someone located the tooth in the victim's bra when the victim subsequently was taken to the hospital.

[4] Specifically, the defendant argues that (1) there was no evidence that the forehead laceration left a scar, as the victim did not testify at trial and Dr. Sherry testified only as to the risk of a scar, and (2) "there was no evidence as to [the victim's] age, suggesting that [the missing tooth] could have been a baby tooth that would ultimately be replaced by an adult tooth or that it was a wisdom tooth that would have otherwise been extracted."

[5] To be clear, the defendant did not object to Dr. Sherry's testimony and does not claim on appeal that the testimony was inadmissible.

[6] The state contends that the defendant did not raise a relevancy objection, and, therefore, he failed to preserve this claim for appellate review. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly . . . [by] articulat[ing] the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose . . . . [T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Internal quotation marks omitted.) *State* v. *Taylor G.*, 315 Conn. 734, 769–70, 110 A.3d 338 (2015). At trial, the defendant objected to the admission of the photographs on the basis that they were "[m]ore prejudicial than probative . . . ." He did not raise a separate relevancy objection, nor did he argue that the photographs had no probative value. See *State* v. *Best*, 337 Conn. 312, 317 n.1, 253 A.3d 458 (2020) (defendant functionally preserved relevancy claim where he argued that photographic evidence was devoid of any probative value). Nevertheless, the defendant subsequently argued that the photographs were "not exactly explaining the injury in itself," which is the same claim he makes on appeal. The state addressed the relevancy of the evidence in response to the defendant's objection, arguing that the photographs were probative of the victim's injuries, and, in the court's ruling, it specifically addressed the relevancy of the photographs, which "eliminate[s] any concerns that the trial court was not on notice of the argument." *State* v. *Streit*, 341 Conn. 170, 187 n.14, 266 A.3d 864 (2021). We therefore conclude that the defendant functionally preserved his relevancy claim. See *State* v. *Best*, supra, 317 n.1.